STATE OF NORTH CAROLINA v. EUGENE OLLIE STREET

No. 7917SC671

(Filed 5 February 1980)

**1. Criminal Law § 92— joinder upon State's motion—timeliness of motion**

There was no merit to defendant's contention that the trial court erred in granting the State's motion for joinder of the charges against defendant because the State's motion was not timely, since there is no statutory time limit for a motion for joinder by the State and since defendant was prepared to go to trial in December 1978 on three of the charges, the trial was not held until February 1979, defendant had over two months to prepare for two additional charges brought against him in December, and there was no showing that defendant, after joinder of the offenses, moved for a continuance so that a new trial strategy could be planned.

**2. Criminal Law § 92.4— sexual offenses against stepchildren—extended period of time—joinder of charges proper**

Though the offenses with which defendant was charged occurred over a five month period, the trial court could properly find that they were part of a single scheme or plan and the court did not err in permitting joinder of the charges, since each of the offenses involved sexual acts committed by defendant upon his stepchildren; all of the victims were members of the same family; each of the offenses allegedly occurred at the same place and under the same circumstances; the incidents under consideration and similar incidents continued for a long period of time and defendant allegedly sexually abused the children virtually every time his wife left him at home alone with them; and in each instance defendant used his parental control over the children to force them to comply with his sexual desires.

APPEAL by defendant from *Albright, Judge*. Judgments entered 23 February 1979 in Superior Court, CASWELL County. Heard in the Court of Appeals 7 December 1979.

1

The defendant was charged in five separate indictments with the commission of sexual crimes against three of his stepchildren. In the interest of protecting the juvenile victims against embarrassment, each will be referred to by his or her first name. The individual indictments charged defendant with assault with intent to rape Penny, incest with Penny, crime against nature with Charles, rape of Kitty, and incest with Kitty.

Upon call of the matter for trial, and in absence of the jury, the State orally moved to join the indictments for trial. The trial court made a finding that the felony offenses charged were based on a series of acts connected together and constituted parts of a single, common scheme or plan and that the offenses charged were properly joinable under N.C. Gen. Stat. § 15A-926(a).

The jury returned the verdict of guilty of Assault With Intent to Commit Rape, Crime Against Nature, and Incest. The defendant was not convicted of Second Degree Rape. Judgments were entered imposing consecutive prison terms of 12-15 years on the Incest conviction, 8-10 years on the Assault With Intent to Commit Rape conviction, and 5 years on the Crime Against Nature conviction.

STATE'S EVIDENCE

The State's first witness was Kitty, aged 15, who testified that the defendant, her stepfather, had sexual intercourse with her at 9:20 a.m. on Sunday, 16 April 1978; that her mother had gone to the grocery store, leaving her at home with the defendant and her brothers and sisters; that the defendant called her into the bedroom to scratch his back; that he undid her pants, pulled them down to her ankles, pushed her down on the bed, got on top of her, penetrated her vagina with his penis, had sexual intercourse with her, but that he pulled out before he ejaculated; that she tried to push him off and could not; and, that when she told him to get up, he told her to "shut up."

Kitty further testified that she was afraid of the defendant; that he had sex with her just about every time her mother left the house, that it had been going on for about four years, since she was 10 years old; that when her father first started messing around with her the defendant was unable to penetrate; and, that she was about eleven or twelve years old when he was first able

to have sexual intercourse with her. Kitty also testified that her stepfather made her brother have intercourse with her about six or seven times; that she never volunteered to have sex with her brother; that her brother never approached her on his own; and that the defendant was always present and watched on these occasions.

Kitty's younger sister, Penny, aged 14, testified that on 1 April 1978, when she was twelve years old, the defendant called her into the house to scratch his back, shut the door, pulled down her pants against her will, pushed her down on the bed, got on top of her, and tried to have sex with her; and that the defendant was unable to penetrate because she was too little. Penny also testified that the defendant fondled her and tried to have sex with her on many other occasions.

Phyllis, the wife of the defendant and mother of the children, testified that she first learned of these offenses about two and one-half years prior to the incident in April 1978. Phyllis stated that she had left the defendant for a period of about four months but returned to him because he had threatened to kill all of them if she did not go back to him. Phyllis also stated that Charles had told her of incidents in which the defendant made Charles have sex with his sister and in which the defendant would tell Charles to watch while the defendant would engage in intercourse with Kitty so that the defendant could show Charles how to have intercourse.

The stepson, Charles, aged 16, testified that the defendant had unnatural intercourse with him in December 1977, when the defendant made Charles engage in fellatio. Charles stated that this occurred at least five times and that on other occasions the defendant would engage in fellatio with Charles. Charles further stated that he had seen the defendant have intercourse with Kitty, that he had had sex with Kitty, that the defendant would tell Kitty to pull down her clothes and then tell Charles to get on top of her. When Charles was unable to have an erection, the defendant would make Charles go into another room to play with himself until he was able to attain an erection. Charles further testified that when he had sex with Kitty, the defendant would stand there and watch.

---

---

The State also introduced evidence of prior statements made by the three stepchildren to a deputy sheriff and social worker for the purpose of corroborating the testimony of the children at the trial.

### DEFENDANT'S EVIDENCE

The defendant presented three witnesses who testified that they were with defendant on the morning of Sunday, 16 April 1978, at the Camp Springs Bluegrass Music Festival until about 9:30 a.m. and that after leaving Camp Springs, they went to the Waffle House restaurant in Danville, Virginia.

John Lewis Walker, aged 18, testified that Kitty had told him that the charges against the defendant were not true.

The defendant's mother testified that she, her husband, and granddaughter, visited the home of defendant on Sunday morning, 16 April 1978, and that Phyllis told her that Eugene came in that morning around 11:00 o'clock.

The defendant also testified that he had been at the Camp Springs Bluegrass Music Festival the morning of 16 April 1978, and that he went to the Waffle House restaurant in Danville, Virginia, after leaving the Camp. The defendant denied committing any of the acts for which he was charged and categorically denied that he had ever sexually abused his stepchildren or anyone else.

*Attorney General Edmisten by Assistant Attorney General Ralf F. Haskell for the State.*

*W. Osmond Smith III for defendant appellant.*

CLARK, Judge.

[1] The defendant contends that the trial court should not have granted the State's motion for joinder of the offenses because the State did not present the motions in a timely manner. We do not agree. N.C. Gen. Stat. § 15A-952(a) provides the general rule for determining when pretrial motions may be made:

"(a) Any defense, objection, or request which is capable of being determined without the trial of the general issue may be raised before trial by motion."

The time limitations provided in subsections (b)(6)e and (c) of N.C. Gen. Stat. § 15A-952 do not apply because these two subsections jointly refer to N.C. Gen. Stat. § 15A-926(c) which relates to timeliness of a motion by a *defendant* for a joinder of offenses against him. Furthermore, even if a statutory time limitation for a motion for joinder by the State existed, subsections (b) and (e) of N.C. Gen. Stat. § 15A-952 have provisos which allow the court to consider the motion at a later time.

We hold that the trial judge in the instant case acted wholly within the permissible range of his discretion when he granted the State's motion for joinder. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978); *State v. Williams*, 41 N.C. App. 287, 254 S.E. 2d 649 (1979). The defendant's brief admits that the defendant was prepared to go to trial in December 1978, on three of the charges. The trial was not held until February 1979. The defendant had over two months to prepare for the two additional charges brought against the defendant in December. Also, there is nothing in the record showing that the defendant, after the joinder of the offenses, moved for a continuance so that a new trial strategy could be planned.

[2]    The defendant's next contention is that the trial court erred in allowing the motion to join the indictments because the alleged acts charged in the instant case were distinct and separate and therefore not a part of a general scheme or plan within N.C. Gen. Stat. § 15A-926(a), which provides as follows:

> "(a) Joinder of Offenses.—Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a *series of acts* or transactions connected together or constituting parts of a *single scheme* or plan. Each offense must be stated in a separate count as required by G.S. 15A-924." (Emphasis added.)

The test we must apply is "whether the offenses are *so separate in time or place* and *so distinct in circumstances* as to render a consolidation unjust and prejudicial to defendant." *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). We, like the defendant, can find no case in this jurisdiction where acts allegedly committed by a defendant five months apart were held to be parts of a single scheme or plan. Nonetheless, each of the offenses for which the defendant was charged allegedly occurred at the

same place and under the same circumstances. All of the victims were members of the same family. The evidence tended to show that these incidents and similar incidents continued for a long period of time, and that the defendant sexually abused his children virtually each time his wife left the defendant home alone with the children. In each instance the defendant used his parental control over the children to force them to comply with his sexual desires. Consequently, we think that even though the time period between some of the acts was substantial, the acts were nonetheless so similar in circumstance and place as not to render the consolidation of the offenses prejudicial to the defendant. We also note that all of the offenses involved sexual abuses of stepchildren, and although N.C. Gen. Stat. § 15A-926 does not permit joinder of offenses solely on the basis that they are the same class, the nature of the offenses is a factor which may properly be considered in determining whether certain acts constitute parts of a single scheme or plan. *State v. Greene, supra.*

Similarly, the trial court did not err in admitting testimony as to other crimes or bad acts because the evidence all went toward showing that the defendant had the intent to commit sexual crimes and that his actions were part of a broader scheme, plan or design to perpetrate these crimes upon his stepchildren at times when he was left alone with them. The Supreme Court of this State has been quite liberal in admitting evidence of similar sex crimes, *State v. Greene, supra,* and we see no reason in the instant case to diverge from the Supreme Court's liberal evidentiary rulings in cases involving sexual assaults.

No error.

Judges ARNOLD and ERWIN concur.