STATE OF NORTH CAROLINA v. BOBBY L. BYRD

No. 8010SC907

(Filed 3 March 1981)

**1. Criminal Law § 92.3— consolidation of charges against one defendant**

The trial court did not err in consolidating for trial charges against defendant for assault with a deadly weapon on a law officer in the performance of his duties and assault on the same officer with a deadly weapon with intent to kill inflicting serious injuries not resulting in death and charges against defendant for breaking and entering a restaurant, breaking and entering another building and larceny from the second building where the assaults occurred when the officer attempted to arrest defendant while defendant was fleeing from the scene of the other crimes, since all of the charges against defendant were based on the same series of acts or transactions connected together within the meaning of G.S. 15A-926(a).

**2. Criminal Law § 26.5; Constitutional Law § 34— assault charges involving law officer — no double jeopardy — no election required — arrest of judgment in one case**

Defendant was not placed in double jeopardy by his trial on charges of assault upon a law officer with a firearm while he was in the performance of his duties and assault on the same officer with a deadly weapon with intent to kill inflicting serious injuries, and the State was not required to elect between the two assault charges. However, where defendant was convicted upon both charges, judgment must be arrested in the case charging the defendant with the lesser included offense of assault upon the officer with a firearm while he was in the performance of his duties.

**3. Criminal Law §§ 75.13, 169.3— statements by defendant to third persons — similar testimony admitted without objection — harmless error**

The admission over objection of an officer's testimony concerning statements he heard defendant make to third persons while defendant was in custody but under treatment in a hospital emergency room did not constitute prejudicial error where a second officer who overheard the statements was allowed to give similar testimony without objection.

**4. Criminal Law § 73— hearsay testimony**

The trial court properly sustained an objection to the question "What did you say to him and what did he say to you?" since the question was designed to elicit

State v. Byrd

hearsay testimony.

**5. Criminal Law § 101.4— exhibits taken to jury room — absence of objection**

Defendant waived objection to the action of the trial court in permitting the jury to take into the jury room an item which had been introduced into evidence by failing to enter an objection or otherwise indicate his lack of consent at the trial.

**6. Criminal Law § 162— necessity for objection to evidence**

The trial court did not err in the denial of defendant's oral motion to suppress his clothing made at the conclusion of an officer's testimony where defendant failed to object to the officer's testimony describing defendant's clothing and the circumstances under which he obtained the clothing and failed to object when the clothing was offered into evidence.

**7. Criminal Law § 101.2— refusal to question jurors about newspaper article**

The trial court did not abuse its discretion in the denial of defendant's motion to examine the jurors as to whether they had read a newspaper article pertaining to defendant's trial and stating that defendant was a prison parolee where there was no evidence that any juror had read or heard about the article in question.

**8. Burglary and Unlawful Breakings § 5.9; Larceny § 7.8— breaking and entering and larceny — sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for breaking and entering a restaurant and a loan company and larceny of property from the loan company where it tended to show that within minutes after a police officer responded to an activated burglar alarm at the loan company at 3 a.m., defendant was seen in a parking lot at a point near the rear entrances to the restaurant and the loan company; defendant immediately began to run from the scene; officers discovered that both businesses had been forcibly entered and goods had been removed from the loan company; after officers apprehended defendant, they found a work glove in defendant's clothing similar to another work glove found at the scene of the break-ins; defendant's clothing contained dust particles similar to those found inside the premises of the break-ins where a brick wall between the two businesses had been broken open to allow passage from the restaurant to the loan company; during defendant's flight from the scene, he violently resisted apprehension and arrest; and defendant made incriminating statements at a hospital after his arrest in which he recognized that he had been in the parking lot behind the restaurant and loan company.

APPEAL by defendant from *Braswell, Judge.* Judgment entered 23 May 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 5 February 1981.

In four indictments, defendant was charged with breaking and entering of a restaurant, and breaking, entering and larceny from another building, assault upon a law enforcement officer with a deadly weapon while the officer was performing his duties, and

assault of the same officer with a deadly weapon with intent to kill inflicting serious injuries not resulting in death. Upon a plea of not guilty, defendant was tried before a jury and found guilty of breaking and entering the restaurant, breaking or entering and felonious larceny from the other building, assault on a law enforcement officer with a deadly weapon while in the performance of his duty, and assault with a deadly weapon inflicting serious injury. From sentences imposing imprisonment, defendant appeals.

The State's evidence tended to show that in the early morning hours of 17 February 1980, a burglar alarm at the Reliable Loan Company, a pawn shop in Raleigh, was activated. Responding to the alarm, several police officers arrived on the scene. Officer L. H. Knight observed the front part of the store while Officer J. R. Fluck investigated the rear of the store where there was a parking lot. As Officer Fluck pulled his patrol car into the parking lot and directed his headlights on the building, a tall black male, the defendant, ran in front of the car. Officer Fluck radioed to Officer Knight that he had a subject running out of the parking lot, and Officer Fluck gave chase. Although defendant eluded Officer Fluck, Officer Knight joined the pursuit on foot. When Officer Knight caught up with the defendant, defendant turned and hit Knight in the head. Knight wrestled defendant to the ground and as they struggled defendant attempted to grab Knight's service revolver which had been strapped in Knight's holster. Knight grabbed the cylinder of the revolver as defendant succeeded in removing the gun from its holster. As they struggled for possession with defendant maintaining a normal shooting grip on the weapon, the gun fired, striking Knight in the chest. Knight gained possession of the revolver as he fell after the shot. As defendant started away, Knight yelled "halt", fired one shot in the air, and then shot defendant. At that point, Officer Fluck arrived and arrested defendant.

At the hospital where defendant was taken for treatment of his gunshot wound, Officer Fluck and another officer overheard a conversation between defendant and two women who appeared to be defendant's mother and wife. One of the women asked if defendant knew he had shot a policeman and defendant responded in the affirmative. The woman asked if defendant had been caught coming out of the building, and defendant answered, "No, they got me in the parking lot."

Further evidence for the State indicated that both the Reliable

---

State v. Byrd

---

Loan Company and the adjacent restaurant, the Charcoal Flame Restaurant, had been broken into that night, and that numerous items of personal property had been taken from the Reliable Loan Company. Analysis of defendant's clothing revealed dust similar to that found at the scenes of the break-ins.

Defendant introduced evidence that at the hospital his family inquired only of his health.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Nonnie F. Midgette, for the State.*

*Dean & Dean, by Joseph W. Dean, for the defendant appellant.*

WELLS, Judge.

[1] Defendant first assigns as error the trial court's granting, over his objection, of the State's motion that all the charges against defendant be joined for trial. As grounds for its motion, the State asserted that all of the charges against defendant were based on the same act or series of acts or transactions connected together or constituting part of a single scheme or plan. *See* G.S. 15A-926 (a).[1] Defendant argues that joining the assault charges resulted in inflaming the jury against defendant with respect to the breaking and entering and larceny charges; that the assault on Officer Knight was a separate incident; and that evidence of the assault would not necessarily be relevant in a separate trial on the other charges.

Defendant contends that in order for joinder to be non-prejudicial, there must be a common scheme or plan underlying or connecting the various charges. We do not agree. The statute allows for joinder not only of charges based on a series of acts or transactions constituting parts of a single scheme or plan, but also those based on a series of acts or transactions connected together. We hold that defendant, who was fleeing from the scene of one of the other crimes with which he was charged and who assaulted an officer attempting to apprehend, detain, or arrest him while in such flight, was engaged in a series of acts or transactions connected together

---

[1] §15A-926. Joinder of offenses and defendants.—
(a) Joinder of Offenses.—Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan. Each offense must be stated in a separate count as required by G.S. 15A-924.

within the meaning of G.S. 15A-926(a). Under these circumstances, the offenses were not so separate in time or place or so distinct in circumstances as to render a consolidation unjust or prejudicial to defendant. *See State v. Street*, 45 N.C. App. 1, 262 S.E. 2d 365. *cert. denied*, 301 N.C. 104, 273 S.E. 2d 309 (1980); *State v. Johnson*, 280 N.C. 700, 187 S.E. 2d 98 (1972). Ordinarily, a motion for joinder under G.S. 15A-926 is addressed to the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Greene*, 294 N.C. 418, 421-22, 241 S.E. 2d 662, 664 (1978), *See also State v. Brown*, 300 N.C. 41, 45-46, 265 S.E. 2d 191, 194-95 (1980). There being no abuse of discretion here, this assignment is overruled.

**[2]**  Defendant next assigns as error the submitting of both assault charges to the jury, arguing that defendant was twice put in jeopardy for the same offense and that the State should have been required to elect between the two assault charges. We do not agree. *See State v. Partin*, 48 N.C. App. 274, 279-80, 269 S.E. 2d 250, 253-55 (1980). Although it was not error to charge and try defendant for both offenses, the constitutional guarantee against double jeopardy protects defendant from multiple punishment for the same offense. The elements of the assault upon Officer Knight, a law enforcement officer, with a firearm while he was in the performance of his duties are all included in the offense of assault upon Officer Knight with a deadly weapon inflicting serious injury. *State v. Partin, supra*, at 280-82, 269 S.E. 2d at 255. This requires us to arrest judgment in the assault conviction in 80CRS8961A for violation of G.S. 14-34.2.

**[3]**  Defendant next assigns as error the admission, through the testimony of two police officers, of several statements made by defendant and overheard by the police officers while defendant was in custody but under treatment in the hospital emergency room. This testimony was first offered through Officer J. R. Fluck. On defendant's objection, the trial court conducted a *voir dire*, made findings of fact and overruled defendant's objection. Officer Fluck testified as follows:

> During the period of time that I was in the Emergency Room with him I was approximately six to eight feet from the defendant. There were statements made by persons to him while I was in the Emergency Room in his presence. I was able to hear and understand some of those statements and some I

State v. Byrd

was not. While the physicians and emergency personnel, what have you, were attending him when he first came in, they converged on [him] so that they completely surrounded him while attending him. I stepped back as far in the room as I could without leaving the room. There was mumbling going on amongst them while they were treating him. I did not make out what that was.

There was [sic] several people talking at one time and going back and forth and what have you and I didn't pay attention to it as it wasn't important to me. During the period of time I was in the Emergency Room with the defendant I did hear him make statements later on. I was able to hear and understand those statements. During that period of time in the Emergency Room some non-medical personnel entered the area and engaged in a conversation with the defendant. I do not know positively who those persons were. After the emergency medical people left the room, approximately a half hour after he arrived, a doctor came in and spoke with him for a minute, and a nurse came in and spoke with the doctor, and the two of them went out. And approximately a minute went by and two black females came in, one noticeably older than the other. And they engaged in a conversation with the defendant. I heard that conversation. There was a conversation about concern for the patient's health and feeling, and what have you. I did not pay it any attention. Something that struck my attention was when the older black female began to ask questions which appeared to me to be — the older black female asked the defendant if —said, do you know you shot a policeman? The defendant replied "yes." The younger black female asked, "did they catch you in the building?" The defendant replied, "no." The older black female asked, "did they catch you coming out of the building?" The defendant replied, "No, they got me in the parking lot." The younger — at that point I was took [sic] the statement (rest of answer stricken). After the defendant's statement about "no, in the parking lot," I turned my head to Officer Mason to look at him. And he looked at me, and I could not state fully who made the next statement, but it was a female voice. The statement that I heard next was, "be quiet." And after that there was a pause and the two black ladies and the defendant engaged in casual conversation about feeling, health, how he felt, and continued on like that.

Officer Fluck had previously testified that at the time the conversations took place, defendant appeared to be coherent, unexcited, in a full state of mind, and fully aware of his physical and "mental" surroundings, and that defendant made lucid responses to unsolicited questions. The record discloses that a later witness, Officer B. H. Mason, who was present with Officer Fluck in the emergency room when the conversations took place, was allowed without objection to testify as to these self-same conversations and statements. The admission of testimony over objection is ordinarily harmless when testimony of like import is thereafter introduced without objection. *State v. Greene*, 285 N.C. 482, 496, 206 S.E. 2d 229, 238 (1974). If it was error to admit Officer Fluck's testimony as to these conversations, it was cured by the admission of Officer Mason's testimony of the same import without objection. *See State v. Chapman*, 294 N.C. 407, 413, 241 S.E. 2d 667, 671 (1978); 1 Stansbury's N.C. Evidence § 30, at 79 (Brandis rev. 1973).

**[4]**    Defendant also assigns as error the refusal of the trial court, upon objection by the State, to allow defendant's wife to testify as to the conversation in the hospital emergency room. The question to which the State objected was as follows: "What did you say to him and what did he say to you?" Defendant argues that he was entitled to the wife's answer to this question to rebut the testimony of officers Fluck and Mason as to the content of the conversation. The question, as phrased, was designed to elicit hearsay testimony, and as phrased, the trial court properly sustained the objection. Of course, defendant could have testified in rebuttal to give his version of what he said to his wife and mother in the presence of the officers, but defendant did not choose to testify. Later in the trial, defendant's wife was recalled and allowed to testify that at the time she was at the hospital neither she nor her mother-in-law had any conversation with defendant concerning buildings. Counsel for defendant then asked Mrs. Byrd the following question: "[D]id you say to Mr. Byrd did they catch you coming out of the building?" Objection by the State was properly sustained. The question was leading and was designed to elicit testimony redundant to and repetitive of testimony previously given. Under these circumstances, it was within the sound discretion of the trial court to disallow the question. *See State v. Greene, supra*, at 492, 206 S.E. 2d at 235. Further, we note that the record does not contain what the witness' answer to the leading question would have been had she been allowed to answer and, therefore, this exception cannot be sus-

tained. *State v. Fletcher*, 279 N.C. 85, 99, 181 S.E. 2d 405, 414 (1971); 1 Stansbury's N.C. Evidence § 26, at 62 (Brandis rev. 1973). Similar exceptions are brought forward under this assignment pertaining to leading questions put to two other witnesses, defendant's mother and sister, with similar results. None of these exceptions can be sustained and these assignments are overruled.

**[5]** Defendant next assigns as error the action of the trial court in allowing the jury to take an item—some plastic black tape—into the jury room. The record indicates that the tape was introduced as substantive evidence. G.S. 15A-1233(b)[2] states the statutory rule under which the jury may request and take into the jury room exhibits which have been received in evidence. The statute allows such action with the consent of the parties. In the case *sub judice*, when the request was made, neither the State nor the defendant entered an objection—nor does the record show that either consented. While we believe that the better practice should be for the trial judge to determine whether or not the parties consent before allowing the jury request, we nevertheless hold that having failed to enter an objection or otherwise indicate his lack of consent, the defendant waived his right to object. This assignment therefore presents no question for our review.

**[6]** Defendant next assigns as error the denial of the trial court of his motion to suppress defendant's clothing. Defendant's oral motion to suppress came at the conclusion of the testimony of J. H. Ross, one of the State's witnesses. Defendant did not object to the testimony of Officer Ross in describing defendant's clothing or describing the circumstances under which he obtained defendant's clothing. Neither did defendant interpose any objection when the clothing, which had been properly identified as an exhibit, was offered into evidence. Under these circumstances, the admission of this evidence will not be reviewed on appeal. *See State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976). This assignment is overruled.

---

[2] G.S. 15A-1233(b) reads as follows:

(b) Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating to the same issue so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

[7]   Defendant next assigns as error the denial by the trial court of his motion to examine the jurors as to whether they had read a Raleigh newspaper story pertaining to defendant's trial. Defendant's counsel described the story to the trial court, indicating that the story related that defendant, a parolee, was on trial in Wake Superior Court on charges of breaking into a restaurant and pawn shop and shooting a Raleigh policeman with the officer's gun. The following exchange then took place:

> COURT: Sir, have you any evidence that any juror has read that article or any other articles since they have been impounded as jurors in this case?
>
> MR. DEAN: No, sir, I have not, of course, communicated with any juror. I am sometimes afraid to smile at them in the hall. I have not been in the jury room. Don't know if the newspaper is in there. I would have to answer the court's question in the negative. I don't believe any defense attorney, unless he has approached a juror, could determine if he had been reading a newspaper, and I would not approach one.
>
> COURT: Then there is no legal basis for the court to make such an inquiry and absent even a prima facie showing of legal necessity for the court to make inquiry, the court will not. Your motion is respectfully denied.

In *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652 (1971), our Supreme Court, faced with a similar question, said:

> "As a general rule, the allowance or refusal of a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court." [Citation omitted.] There is no evidence in this record that any of the jurors had read or heard about the article in question or that defendants were in any manner prejudiced by it. Better practice would have been for the court to inquire of the jurors to see if any of them had read or heard about the article in question, and if so, had been in any manner influenced by it. However, in the absence of any showing of prejudice, no abuse of discretion is shown. Error will not be presumed. [Citations omitted.]

279 N.C. at 432-33, 183 S.E. 2d at 655. No prejudice having been shown here, we find no abuse of discretion, and this assignment is

overruled.

**[8]** Defendant also assigns as error the failure of the trial court to grant his motion for dismissal. While the evidence against defendant on the breaking and entering and larceny charges was substantially circumstantial, the evidence was clearly sufficient to take these charges to the jury. Within minutes after a police officer responded to an activated burglar alarm at Reliable Loan Company, defendant was seen in the parking lot at a point near the rear entrance of the Charcoal Flame Restaurant and Reliable Loan Company. The time was approximately three o'clock in the morning of Sunday, 17 February. When seen by the police officer, defendant immediately began to run from the scene. Police officers discovered that both businesses had been forcibly entered and goods removed from the loan company. After apprehension, officers found a work glove in defendant's clothing similar to another work glove found at the scene of the break-ins. Defendant's clothing contained dust particles similar to those found inside the premises of the break-in, where a brick wall between the two establishments had been broken open to allow passage from the restaurant to the loan company. During defendant's flight from the scene, he violently resisted apprehension and arrest. At the hospital, defendant made incriminating statements recognizing that he was in the parking lot behind the buildings. This evidence, when viewed in the light most favorable to the State, and considered, as required, so as to give the State the benefit of every reasonable inference to be drawn from it, *State v. Witherspoon*, 293 N.C. 321, 326, 237 S.E. 2d 822, 826 (1977), was sufficient to overcome defendant's motions on the breaking and entering and larceny charges. The evidence on the assault charges is so clear and so strong as not to require discussion. This assignment is overruled.

We have examined defendant's remaining assignments of error, find them to be without merit, and overrule them. Defendant was given a fair trial, free from prejudicial error.

The results are:

In 80CRS8961A, judgment is arrested.

In 80CRS8961B, 80CRS8960, and 80CRS8962,

No error.

Judges ARNOLD and HILL concur.