STATE OF NORTH CAROLINA v. ERIC LAMONT PERRY, DEFENDANT

No. COA99-1113

(Filed 6 February 2001)

**Criminal Law— joinder of offenses—insufficient transactional connection—prejudicial error**

The trial court abused its discretion and committed prejudicial error by granting the State's motion for joinder of defendant's offenses under N.C.G.S. § 15A-926(a) arising out of Durham Hispanic home invasions and financial card theft charges arising out of automobile break-ins and a Chapel Hill armed robbery, because: (1) the transactional connection between the offenses is insufficient when the possession of stolen property charges arose from automobile break-ins which occurred in August and October 1997, the armed robbery occurred in Chapel Hill in September 1997, the Hispanic home invasions occurred in Durham during a six-day period in October 1997, and the Hispanic home invasions were not involved in the offenses from which the possession of stolen property charges arose; (2) evidence of property stolen in the car break-ins and Chapel Hill robbery would not have been admissible under N.C.G.S. § 8C-1, Rule 404(b) had defendant been tried separately upon the charges arising out of the Durham Hispanic home invasions; and (3) the jury's assessment of the credibility of the testifying codefendants could have been affected by the substantial evidence connecting defendant with the other crimes.

Appeal by defendant from judgments entered 29 January 1999 by Judge David Q. LaBarre in Durham County Superior Court. Heard in the Court of Appeals 21 August 2000.

STATE v. PERRY

[142 N.C. App. 177 (2001)]

*Attorney General Michael F. Easley, by Assistant Attorney General Anne M. Middleton, for the State.*

*Brian Michael Aus for defendant-appellant.*

MARTIN, Judge.

Defendant was charged on 6 April 1998 with three counts of first degree burglary, eleven counts of robbery with a dangerous weapon, three counts of attempted robbery with a dangerous weapon, eleven counts of second degree kidnapping, one count of first degree kidnapping, one count of first degree rape, one count of attempted first degree rape, two counts of felonious possession of stolen goods, two counts of misdemeanor possession of stolen goods, and five counts of financial transaction card theft. The possession of stolen goods charges stem from an armed robbery which occurred in Chapel Hill in September 1997, and three car break-ins which occurred in August and October of 1997. The remaining charges stem from three home invasions and armed robberies targeting Hispanic individuals that took place in Durham on 18, 20, and 24 October 1997.

The State moved to join the offenses for trial, and defendant moved to sever. The trial court granted the State's motion. The State offered evidence with respect to the 18, 20, and 24 October 1997 incidents through the testimony of six victims and three co-defendants, James Daye, Taqiyy Coley and Romone Miles. The first incident occurred at 1:00 a.m. on 18 October 1997. Three victims, Elmer Castro, Dina Solorsano and Neftali Aviles, testified that several armed intruders kicked open the door of their residence, entered a bedroom, and ordered Aviles, Castro and Serbelio Villalta to lie down on the floor. One intruder pointed a .12 gauge shotgun at Aviles and hit him in the head with the gun when he tried to look up. The intruders went through the belongings of the men and stole money, which Aviles and Castro valued at $2,350. The intruders then forced open the door to a second bedroom, held guns to the heads of Solorsano and Wenceslo Hernandez and took their money, which was less than $100. Co-defendants Daye, Coley and Miles testified that defendant participated in the burglary armed with a shotgun, and that money was taken from the residence.

The second incident occurred at 10:00 p.m. on 20 October 1997. Evangelina Gardner testified that two armed black men broke in a home occupied by her, her boyfriend, her baby and a few of her boyfriend's friends. One intruder shot at the bedroom door when he

realized that Ms. Gardner and her boyfriend were trying to hold it shut. Ms. Gardner testified that a "tall guy" came into the room pointing a gun at her and her boyfriend; he was later joined by a "short guy" with a "hideous" mask. They took her boyfriend's jewelry and ordered her to take off her t-shirt. When she refused, the "tall one" threatened to kill her baby; she then complied with his request. After the "short guy" forced her boyfriend out of the room, the "tall one" then ordered her to take off her underwear and held a gun to her baby's head. She testified that both men raped her. The intruders left with an undisclosed amount of money, rings and a camcorder. Daye testified that he and the defendant conducted this robbery. He testified that he held a gun on the men in the other room while defendant approached Ms. Gardner's bedroom. He further testified that he ordered Ms. Gardner to take her shirt off; he then tried to penetrate her but was unsuccessful, and defendant subsequently raped her.

The third incident occurred on 24 October 1997 at 1:00 a.m. Two victims, Guadalupe Rodriguez and Raul Hernandez, testified that the door to their apartment opened suddenly and several black men entered. Rodriguez testified that one intruder had a pistol and another had a long shotgun. The victims were told to lie down on the floor and both were held at gunpoint. Rodriguez was hit in the head with a gun and kicked in the stomach. Hernandez' fifteen year old son was also assaulted. The intruders fled with approximately $640. Coley testified that he, defendant, Daye, Christopher Thompson and Miles were involved in the robbery; that money was taken; and that defendant was armed with a shotgun.

None of the six victims of the Hispanic home invasions who testified against defendant was able to identify him positively as a perpetrator. Detective B.P. Hallan of the Durham City Police Department testified that he conducted a consensual search of defendant's bedroom and found property, including Mexican and Nicaraguan currency, a Halloween mask, a photo album, stereo equipment, jewelry, a shotgun, credit and bank cards. Though none of the property was identified as having been stolen during the Hispanic home invasions, the shotgun and mask were identified as being similar to those employed by the perpetrators. However, the State offered the testimony of victims of the Chapel Hill armed robbery and the automobile break-ins, who identified items found in defendant's home as belonging to them.

At the close of the State's evidence, the court dismissed one count of robbery with a dangerous weapon, four counts of attempted

robbery with a dangerous weapon, four counts of financial card theft, and all charges of kidnapping. Defendant renewed his motion to sever the offenses, which was denied by the court. Defendant then entered pleas of guilty to two counts of felonious possession of stolen goods, two counts of misdemeanor possession of stolen goods, and one count of financial transaction card theft, all of which involved property taken during the Chapel Hill armed robbery and the automobile break-ins. Sentencing for these offenses was deferred until the jury returned verdicts on the remaining charges.

Defendant offered the testimony of his step-father, who testified that he had a collection of foreign currency in a photo album, and that some of the currency was missing. The witness admitted, however, that he had never been to Nicaragua. Defendant also offered the testimony of co-defendant Thompson, who said he did not know defendant prior to his arrest, and the testimony of Dyaz McDougal who stated that she was with defendant in Greensboro from 11:45 p.m. on 24 October 1997 to approximately 12:45 a.m. on 25 October 1997.

The jury returned verdicts finding defendant guilty of two counts of first degree burglary, five counts of robbery with a dangerous weapon, one count of first degree rape, two counts of felonious possession of stolen goods, two counts of misdemeanor possession of stolen goods, and one count of financial transaction card theft. Defendant appeals from judgments entered on the verdicts.

---

Defendant assigns error to the trial court's ruling granting the State's motion for joinder of the offenses. Specifically, defendant argues that the charges related to the three Hispanic home invasions in Durham should not have been joined with those charges arising from the automobile break-ins and the Chapel Hill armed robbery.

G.S. § 15A-926(a) governs joinder of offenses and provides:

Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are *based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan* (emphasis added).

This rule requires a two-step analysis: (1) a determination of whether the offenses have a transactional connection, and (2) if there is such a connection, "consideration then must be given as to 'whether the accused can receive a fair hearing on more than one charge at the

same trial.' " *State v. Montford*, 137 N.C. App. 495, 498, 529 S.E.2d 247, 250, *cert. denied*, 353 N.C. 275, 546 S.E.2d 386 (2000) (quoting *State v. Silva*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981)). A decision to consolidate offenses is within the discretion of the trial court, however, if the consolidated charges have "no transactional connection, then the consolidation is improper as a matter of law." *State v. Owens*, 135 N.C. App. 456, 458, 520 S.E.2d 590, 592 (1999).

We must first determine whether there was a transactional connection between the offenses. We consider the following factors to make this determination: "(1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *Montford*, 137 N.C. App. at 498-99, 529 S.E.2d at 250.

In this case, the transactional connection between the offenses is insufficient for joinder. The possession of stolen property charges arose from automobile break-ins which occurred in August and October, 1997 and a September 1997 armed robbery which occurred in Chapel Hill under circumstances quite different from the charges arising from the home invasions, all of which occurred in Durham during a six-day period in October, 1997. Furthermore, the co-defendants who were involved in the crimes arising out of the Hispanic home invasions were not involved in the offenses from which the possession of stolen property charges arose. The sole common denominator between the possession of stolen property charges and the charges arising out of the Hispanic home invasions is that some of the evidence found in defendant's bedroom linked him to the Chapel Hill armed robbery and the automobile break-ins, supporting the possession of stolen property and financial card theft charges, while other evidence found in the bedroom linked defendant to the Hispanic home invasions in Durham. This circumstance is not a sufficient transactional connection to support joinder, and the trial court erred in granting the State's motion to join the offenses for trial.

The error does not, however, entitle defendant to a new trial unless it resulted in prejudice to the defendant, i.e., unless "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a) (2000). In the case before us, joinder of the stolen property offenses with those arising from the Hispanic home invasions led to inclusion of a substantial amount of evidence and testimony linking defendant to the car break-ins and the Chapel

Hill armed robbery, including photographs of defendant's room showing large amounts of stolen property, as well as calling cards, checks, credit cards and driver's licenses belonging to the victims of the otherwise unrelated car break-ins and robbery.

The State argues that any error in joining the offenses was not prejudicial because the evidence would have been admissible at a separate trial pursuant to G.S. § 8C-1, Rule 404(b). The State contends the evidence of the stolen property, including the Mexican and Nicaraguan currency, is admissible to show defendant's identity as the perpetrator of the Hispanic home invasions because it refutes defendant's assertion that he did not commit those crimes. However, our review of the trial transcript reveals no testimony showing that Mexican or Nicaraguan currency was among the items stolen during the Durham Hispanic home invasions. The victims testified the robbers took "money" and valued the amount taken in U.S. dollars. Upon examination by the State, Guadalupe Rodriguez testified "money" was stolen; significantly, he did not have any Mexican pesos. Moreover, the four co-defendants who testified at trial all stated "money" was taken during the robberies. Two of the co-defendants, Daye and Coley, testified they stole money during the incidents and valued the amount taken in U.S. dollars. The co-defendants also testified as to other items taken, such as jewelry and stereo equipment, but did not mention Mexican or Nicaraguan money. The only evidence found in defendant's bedroom connecting him to the Durham robberies was the mask and shotgun, identified by the victims as similar to those used by the perpetrators. Thus, evidence of property stolen in the car break-ins and Chapel Hill robbery would not have been admissible under Rule 404(b) had defendant been tried separately upon the charges arising out of the Durham Hispanic home invasions.

We must next determine if there is a reasonable possibility that a different result would have been reached as to defendant's guilt or innocence of the charges arising out of the Durham Hispanic home invasions if the stolen property and financial card theft charges arising out of the automobile break-ins and Chapel Hill armed robbery had not been joined for trial. The remaining evidence against defendant with respect to the Durham Hispanic home invasions consisted of the testimony of three co-defendants who had entered into plea agreements in exchange for their testimony against defendant, and the shotgun and mask found in defendant's bedroom. None of the victims identified defendant as a perpetrator of those crimes. While the

State's evidence was clearly sufficient to go to the jury, the jury's assessment of the credibility of the testifying co-defendants could certainly have been affected by the substantial evidence connecting defendant with other crimes. In our view, had the jury not been exposed to the evidence of defendant's guilt of the stolen property and financial card theft charges arising out of the automobile break-ins and Chapel Hill armed robbery, there is a reasonable possibility of a different result in defendant's trial on the charges arising out of the Durham Hispanic home invasions. Thus, we must conclude that join-der for trial of the possession of stolen property and financial card theft charges with the charges arising from the Durham Hispanic home invasions was prejudicial error, entitling defendant to a new trial on those charges to which the jury returned verdicts of guilty. Because the charges to which defendant pled guilty were consoli-dated with one of the charges for which we have awarded a new trial, we must also remand cases 98 CRS 12427 and 98 CRS 12428 for a new sentencing hearing.

We need not address defendant's remaining assignments of error as they may not occur at retrial.

Cases 98 CRS 12427 and 98 CRS 12428—Remanded for resentencing.

Cases 98 CRS 12414, 98 CRS 12415, 98 CRS 12417, 98 CRS 12418, and 98 CRS 12420—New trial.

Chief Judge EAGLES and Judge HORTON concur.