An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1433

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.

Iredell County
Nos. 08 CRS 59811-15, 59892-96; 09 CRS 7498-99, 7500; 12 CRS 51941-43

MARSHALL LEE ELLER

Appeal by Defendant from Judgments entered 22 March 2013 by Judge Joe Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 21 May 2014.

>*Attorney General Roy Cooper, by Assistant Attorney General Alexandra Gruber, for the State.*

>*Glover & Petersen, P.A., by James R. Glover and Ann B. Petersen, for Defendant.*

STEPHENS, Judge.

*Factual Background and Procedural History*

On 12 October 2009, Defendant Marshall Lee Eller was indicted on sixteen counts of indecent liberties with a child

and one count of first-degree sex offense.[1]

Prior to the trial, the State moved for joinder of all charges. The trial court granted the motion and found that the charges constituted a single scheme or plan, noting that the same attorney represented Defendant on all charges, the facts surrounding each charge were similar in scheme or plan, joinder would not impair Defendant's ability to present a defense, and the charges were "not so separate in time and place or so distinct in circumstance as to render their consolidation unjust or prejudicial to . . . Defendant." The case came on for trial on 18 March 2013, and verdicts were rendered on 22 March 2013. The State's evidence tended to show the following:

Over the span of twenty-two years, Defendant engaged in indecent liberties with three children: Defendant's stepdaughter, "Mary"; Mary's childhood friend, "Brenda"; and Defendant's stepgranddaughter, "Alison."[2] The incidents involving Mary took place between 1985 and 1992, beginning when she was nine years old. The incidents involving Brenda took place

---

[1] Neither the indictment nor the verdict for the charge of first-degree sex offense appears in the record. However, both the record and transcript indicate that Defendant was charged with and found not guilty of this offense.

[2] Pseudonyms are used to protect the juveniles' identities.

between August of 1987 and April of 1988, beginning when she was eleven years old. The incidents involving Alison took place between 2004 and 2008, beginning when she was eleven years old.

*A. Mary (1985 to 1992)*

Mary testified to two specific incidents between her and Defendant as well as a series of reoccurring incidents that took place from when she was nine years old until she was eighteen. In addition, Mary testified to two other types of reoccurring incidents, the first of which took place beginning when she was ten years old until she was thirteen and the second of which went on as she grew older. The first specific incident between Defendant and Mary occurred when Mary was about nine years old. Defendant took Mary, who lived with Defendant until she was eighteen, into his bedroom, wrestled with her, lifted her shirt, and kissed her on the stomach and chest. The second specific incident occurred when Mary was approximately twelve years old. Defendant instructed Mary to lie on the floor in his bedroom, where he rubbed her back and bottom through her nightgown, reached his hand underneath her underwear, and placed his finger in her vagina.

The series of reoccurring incidents took place from the time Mary was ten until she was eighteen. Defendant would

regularly instruct her to sit on his lap, raise her shirt, fondle her, and put his mouth on her breasts for roughly fifteen minutes at a time. About once a week, Defendant would also place Mary's hand "on the outside of his pants at his crotch area" where she could feel his erect penis. About three times a week, Defendant would come to Mary's room at night and, as she lay on her stomach, lift her nightgown, rub her back, pull down her underwear slightly, and rub her bottom. During these bedtime visits, Defendant would also attempt to roll Mary over or put his hands underneath her in an attempt to touch her breasts. These visits occurred "pretty often" and would last "[thirty] minutes to an hour at times."

The first other reoccurring incident took place when Mary was between the ages of ten and thirteen. While staying at a house he owned and rented to his sister, Defendant took Mary for motorcycle rides and, in a secluded area, "would turn around and . . . feel [Mary's] breasts." Second, as Mary got older, Defendant "[attempted] to come into the bathroom whenever [Mary] was in the shower." Defendant would open the shower curtain, peek at Mary, and touch her breasts.

Mary testified that "most of the time," the incidents occurred in the mobile home that Defendant shared with Mary's

mother. Other times, the incidents occurred when Defendant and Mary were in a car or in the house Defendant owned and rented to his sister.

*B. Brenda (1987 to 1988)*

Brenda came to know Defendant through his stepdaughter, Mary. The first incident between Defendant and Brenda occurred when Defendant entered Mary's room to tuck in both Mary and Brenda during a sleepover. As Defendant tucked in the two girls, he "went up [Brenda's] shirt and [rubbed her] breasts." He then put "his hand . . . under [her] panties . . . [and rubbed] the outside of [her] vagina."

A second incident occurred in spring 1988 when Defendant invited Brenda on a motorcycle ride with him. Defendant stopped his motorcycle in the woods and "took his hand and put it on [Brenda's] . . . vagina outside of [her] clothes and started rubbing [her]."

*C. Alison (2004 to 2008)*

In 1995, Defendant sold his rental property and purchased a house. In 2004, Defendant installed a pool at that residence.

Alison and her family[3] spent almost every weekend at Defendant's house between 2004 and 2008. Defendant also visited Alison at her home.

According to Alison, the first incident with Defendant occurred in August of 2004 when Alison was about eleven years old. In his garage, Defendant "put his hands up [Alison's] skirt on the outside of [her] panties, and [Defendant] rubbed [her] butt."

A second incident occurred when Alison was about twelve. Defendant gave her a piggyback ride in the pool at his residence. During the piggyback ride, Defendant rubbed and squeezed Alison's buttocks and thighs. He then "told [her] that he was sorry that he made [her] feel uncomfortable and that if he ever made [her] feel uncomfortable again that [she] should tell [Defendant], and he wouldn't do it anymore."

A third incident occurred in 2008 when Alison was about fifteen. Defendant and Alison were alone in Defendant's basement when he "put his hand on [her] thigh and was rubbing it and then moved [his hand] down towards [her] vagina" and touched Alison's vagina through her clothing.

Although Alison did not cite specific dates, she testified

---

[3] Alison's father, Michael, is Mary's brother.

to two additional incidents involving Defendant. First, she testified that Defendant visited her and her brother at her home. After sending Alison's brother to take a shower, Defendant approached Alison and rubbed and squeezed her breasts through her shirt as she sat at her computer. Second, after Defendant's wife went to bed, Defendant attempted to kiss Alison on the mouth.

Alison also testified to reoccurring incidents of misconduct. "There were several times that [Alison] would be in the basement, and [Defendant] would come down and just rub [her] on the butt from behind, and he would take [her] hands and put them on his penis." Additionally, "[a] few times in the car, [Defendant] would . . . rub [Alison's] leg while he was driving." Besides these few times in the car, the touching occurred "[n]owhere else besides [Alison's and Defendant's] houses."

At the close of the State's evidence, Defendant moved to dismiss the charges against him. The trial court denied the motion. Thereafter, Defendant testified, denied all the allegations, and again moved to dismiss the charges. Again, the trial court denied the motion.

The jury returned guilty verdicts on sixteen counts of

indecent liberties with a child. The jury found Defendant not guilty on one count of first-degree sex offense. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant contends the trial court erred by (1) joining the charges arising from the incidents occurring between 1985 and 1992 with those arising from the incidents occurring between 2004 and 2008 and (2) denying Defendant's motion to dismiss one of the three charges of indecent liberties with Brenda. We hold that the trial court committed harmless error in joining all the charges for trial. We vacate one of the three convictions of indecent liberties with Brenda and remand for resentencing.

*I. Joinder of Charges*

*A. Transactional Relationship*

As noted above, the trial court joined the 1985–1992 charges with the 2004–2008 charges on the grounds that "the transactions are connected together and . . . constitute a single scheme or plan."

On appeal, Defendant argues that joinder of all the charges was improper. According to Defendant, the fact that all the charges may have been committed "under the same general *modus*

*operandi* is not enough to supply the required transactional connection [and, therefore, is] not enough to make [the charges] a series of connected acts which constitute a single plan or scheme." Defendant further argues that "sexually abus[ing] adolescent girls that were in . . . [D]efendant's home or to whom [Defendant] had access" does not constitute a common scheme or plan. In addition, Defendant points out that the twelve years separating the 2004–2008 charges from the 1985–1992 charges is a far greater gap in time than in previous cases where this Court has found joinder of charges to be proper.

When determining whether offenses should be joined for trial, N.C. Gen. Stat. § 15A-926(a) "requires a two-step analysis: (1) a determination of whether the offenses have a transactional connection, and (2) if there is such a connection, consideration then must be given as to whether the accused can receive a fair hearing on more than one charge at the same trial." *State v. Perry*, 142 N.C. App. 177, 180-81, 541 S.E.2d 746, 748-49 (2001) (citation and internal quotation marks omitted). "The [legal] determination of whether a group of offenses are [sic] transactionally related so that they may be joined for trial is a question of law fully reviewable on appeal." *State v. Guarascio*, 205 N.C. App. 548, 553, 696 S.E.2d

704, 709 (2010) (citation and internal quotation marks omitted). However, the decision regarding whether to join offenses pursuant to that relationship is within the sound discretion of the trial court. *State v. Miller*, 61 N.C. App. 1, 5, 300 S.E.2d 431, 435 (1983) (citations omitted). Therefore, the determination of whether the offenses have a transactional connection is reviewed *de novo*, and the determination of whether the defendant can receive a fear hearing if the offenses are joined is reviewed for abuse of discretion. *See Perry*, 142 N.C. App. at 180-81, 541 S.E.2d at 748-49.

Joinder of charges in a criminal case is proper when the charges are "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2013). Joinder is improper when "the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial [to the defendant]." *State v. Chandler*, 324 N.C. 172, 188, 376 S.E.2d 728, 738 (1989) (citation and internal quotation marks omitted). "[O]ffenses that are committed on separate dates cannot be joined for trial, even when they are of like character, unless the circumstances of each offense are so distinctly similar that they serve almost

as a fingerprint." *State v. Williams*, 74 N.C. App. 695, 697, 329 S.E.2d 705, 707 (1985).

This Court has allowed joinder of charges involving the sexual abuse of minors when that abuse was separated by five months. *State v. Street*, 45 N.C. App. 1, 5-6, 262 S.E.2d 365, 368 (1980) ("[W]e think that even though the time period [of five months] between some of the acts was substantial, the acts were nonetheless so similar in circumstance and place as not to render the [joinder] of the offenses prejudicial to the defendant."). We have declined, however, to join charges involving the sexual abuse of minors when that abuse was separated by as many as seven years. *See generally State v. Bowen*, 139 N.C. App. 18, 29, 533 S.E.2d 248, 255 (2000) (holding that the seven years between offenses and the non-uniform nature of the individual acts meant that the defendant did not have a single scheme or plan); *State v. Owens*, 135 N.C. App. 456, 459-60, 520 S.E.2d 590, 593 (1999) ("[I]n light of (1) the extended interval of as much as [seven] years between some of these offenses and (2) the lack of a consistent pattern in [the] defendant's molesting behavior, we hold that . . . all of the charged acts did not constitute part of a single scheme[.]").

In *Owens*, this Court determined that certain sex-based

offenses separated by at least one year and at most seven years were not transactionally related. *Id.* According to the Court, the following actions were not sufficiently uniform: "[s]ome molestations took place when [the defendant] was alone in the house with a single child. On other occasions, he would isolate a child in his bedroom while others were in the house. [The d]efendant twice took indecent liberties while all three girls were present." *Id.* Due to the separation of time and the lack of uniformity in the defendant's conduct, this Court concluded that joinder was improper. *See id.*

In *Bowen*, this Court was unwilling to permit joinder of charges of alleged sexual crimes against children when the charges occurred over twelve years, were separated by a maximum of seven years, involved three different victims, and the individual acts were of differing natures. *Bowen*, 139 N.C. App. at 30, 533 S.E.2d at 255. There, the first victim testified that in May of 1996, the defendant forced her onto a bed, pinned her down, and inserted his fingers into her vagina. *Id.* at 21, 533 S.E.2d at 250. She also testified that the defendant "had inappropriately touched her on a regular basis." *Id.* at 21, 533 S.E.2d at 250-51. The second victim testified that "in the summer of 1996, [the] defendant forcibly touched her private

parts[.]" *Id.* The third victim, nineteen years old at the time of trial, testified that the defendant had abused her since she was a young child, including forcing her to perform oral sex on the defendant multiple times. *Id.* at 21, 533 S.E.2d at 251.

By contrast, in *Street*, this Court found joinder of alleged sexual crimes involving three victims to be proper when the incidents were separated by five months. 45 N.C. App. at 6, 262 S.E.2d at 368. There, each alleged incident "occurred at the same place and under the same circumstances." *Id.* at 5-6, 262 S.E.2d at 368. In that case, the victims were siblings; all the incidents occurred for a long period of time; every time the defendant was given access, he abused his stepchildren; and, in each incident, the defendant used his authority as a parent to coerce his victims. *Id.* at 6, 262 S.E.2d at 368.

Here, the offenses concerning Alison took place, at a minimum, twelve years after the offenses concerning Mary and Brenda. In addition, the incidents involving Alison were not sufficiently similar to the incidents involving Mary and Brenda. Alison testified that she was abused in Defendant's home, in her home, and in Defendant's car. Defendant gained access to Alison through family gatherings and his relationship with Alison's brother. In contrast, Mary testified that the abuse occurred on

a motorcycle, in her bedroom in Defendant's house, in Defendant's bedroom, and in Defendant's bathroom when Mary would shower. Notably, Defendant would often visit Mary in her bedroom at night. Defendant had access to Mary because she lived in his home whereas Alison never lived with Defendant. Brenda's abuse occurred in Mary's bedroom and on a motorcycle. Because Defendant's access to Mary was of a different character than his access to Alison, the crimes against Mary and Alison are no more uniform than the conduct in *Owens*. *See* 135 N.C. App. at 459-60, 520 S.E.2d at 593. As in *Owens*, the incidents in this case took place in a number of different ways and places. Defendant would isolate Alison by instructing her brother to take a shower, leaving Defendant alone with his victim; he would molest his victims when he was alone in the victim's house; he would molest his victims when the victim was alone in Defendant's house; and, once, he took indecent liberties with two victims while both were present. Moreover, the abuse occurred on a motorcycle, in several bedrooms, in a pool, and in a basement.

"North Carolina appellate courts have been willing to find a transactional connection in cases involving sexual abuse of children." *Bowen*, 139 N.C. App. at 29, 533 S.E.2d at 255 (citation and internal quotation marks omitted). However, we are

not aware of any cases allowing joinder of offenses separated by a period of time longer than two years. See, *e.g.*, *State v. Estes*, 99 N.C. App 312, 317, 393 S.E.2d 158, 161 (1990). Here, the incidents involving Alison took place twelve years after the incidents involving Mary and Brenda. The State cites *Street*, 45 N.C. App. at 1, 262 S.E.2d at 365, to support its position that the time between the 1985–1992 charges and the 2004–2008 charges is not too long to make joinder improper. That case, however, held only that incidents occurring "at the same place and under the same circumstances," *five months apart*, may be joined. *Street*, 45 N.C. App. at 5–6, 262 S.E.2d at 368. *Street* is not controlling where the charges are separated by twelve years, as here. Therefore, because the incidents are separated by twelve years and the conduct is no more uniform than the conduct in *Owens*, we hold that the trial court erred in determining that the abuse concerning Alison from 2004 to 2008 was so transactionally linked to the abuse concerning Brenda and Mary from 1985 to 1992 that joinder of all the charges was proper.

*B. Unfair Prejudice*

Even though the charges were improperly joined, Defendant does not articulate any meaningful prejudice resulting from that joinder, nor do we perceive any. On appeal, Defendant merely

asserts that "joinder would prejudice . . . [his] ability to receive a fair trial." At trial, Defendant argued that joinder was improper because "any arguments made by the [d]efense would be clouded by these other allegations . . . hanging over [Defendant's] head." We note, however, that "evidence of other molestations would have been admissible pursuant to . . . Rule 404(b) [of the North Carolina Rules of Evidence] to show intent, plan, or design" even if the charges had not been joined. *See Bowen*, 139 N.C. App. at 29, 533 S.E.2d at 255 ("[S]hould the trial court allow joinder, and on appeal that joinder be deemed error, this Court should review any resulting prejudice with reference to Rule 404(b).") (citation and internal quotation marks omitted).

Under Rule 404(b), intent, plan, or design may be established using a "lower threshold of proof than that needed to establish the 'series of acts or transactions connected together or constituting parts of a single scheme or plan,' which must be shown for joinder of offenses for trial under section 15A-926(a)." *Id.* "The very terms used in section 15A-926(a) requiring a 'single scheme or plan,' are more exacting than the term 'plan' used in Rule 404(b)." *Owens*, 135 N.C. App. at 460, 520 S.E.2d at 593. Therefore, even if joinder is

improper, additional victims may still testify about similar incidents under Rule 404(b). As a result, the jury would still be aware of the existence of allegations from multiple victims and give that fact weight in their deliberations. *See* N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013).

In a criminal case, evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) as long as it is relevant for some purpose other than to show that the defendant has a propensity for the type of conduct for which he is being tried and as long as it is not too remote. *See, e.g.*, *State v. Frazier*, 344 N.C. 611, 616, 476 S.E.2d 297, 300 (1996) (holding that prior acts of sexual abuse alleged to have occurred over a time period of seven to twenty-seven years before trial were admissible to show a common plan or scheme); *State v. DeLeonardo*, 315 N.C. 762, 771, 340 S.E.2d 350, 357 (1986) (holding that testimony of the defendant's three-year-old daughter regarding his sexual conduct toward her was admissible to establish a common plan or scheme in the defendant's trial for molesting his two sons); *State v. Goforth*, 59 N.C. App. 504, 506, 297 S.E.2d 128, 129 (1982) (affirming the trial court's admission of two sisters' testimony regarding the defendant's sexual abuse to show a pattern of conduct in the defendant's

trial for sexual abuse of his stepdaughter), *reversed on other grounds*, 307 N.C. 699, 307 S.E.2d 162 (1983).

While the admissibility of evidence is not dispositive of the absence of prejudice, admissibility "may be considered in determining whether the consolidation [of charges for purposes of joinder] was unjust and prejudicial to the defendant." *State v. Corbett*, 309 N.C. 382, 389, 307 S.E.2d 139, 144 (1983). When examining the prejudicial impact of joining offenses, this Court "must look to whether [the] defendant was hindered or deprived of his ability to defend one or more of the charges." *Id.* at 389, 307 S.E.2d at 144. Although the trial court erred in joining the charges in this case, neither the record nor Defendant's arguments support the conclusion that Defendant was prejudicially hindered or deprived of his ability to defend one or more of the charges. Accordingly, Defendant's first argument is overruled.

*II. Motion to Dismiss*

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

> Upon [the] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or

of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and internal quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192–93, 451 S.E.2d 211, 223 (1994) (citation omitted), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

On appeal, Defendant argues that the trial court erred in denying his motion to dismiss one of the charges of indecent liberties concerning Brenda because "[t]ouching two parts of a child's body in the course of a single incident is one crime, not two." The State offers no objection and concedes that it "is unable to distinguish the cases cited by [D]efendant from the case at bar." We find Defendant's argument persuasive.

When examining acts prosecuted under the statute governing the taking of indecent liberties with children under N.C. Gen Stat. § 14-202.1(a)(1),

> our Supreme Court has stated that the evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire. [The d]efendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*State v. Jones*, 172 N.C. App 308, 315, 616 S.E.2d 15, 20 (2005) (citation and internal quotation marks omitted). "[A]lthough [N.C. Gen. Stat § 14-202.1] sets out alternative acts that might establish an element of the offense, a single act can support only one conviction." *Id.*

As Defendant notes in his brief, this case is indistinguishable from *State v. Laney*, 178 N.C. App. 337, 631 S.E.2d 522 (2006). There we found that "[the] defendant's acts of touching the victim's breasts and putting his hands inside the waistband of her pants were part of one transaction that occurred the night [in question]. The sole act involved was touching — not two distinct sexual acts." *Id.* at 341, 631 S.E.2d at 524. Here, Defendant was indicted for and convicted of three acts of indecent liberties against Brenda. However, Brenda's

testimony proved only two occasions on which Defendant touched her inappropriately. The first occasion occurred when Brenda spent the night with Mary in her bed. The second occasion occurred when Defendant took Brenda on a motorcycle ride. The three indictments concerning indecent liberties against Brenda lay out no specifics other than a date range, and all three indictments are identical. Accordingly, we conclude that the trial court erred in denying the motion to dismiss one of the three indecent liberties charges concerning Brenda, and we vacate the corresponding conviction.

Defendant's three convictions for indecent liberties against Brenda were consolidated into one judgment. When one such conviction is vacated, "the better procedure is to remand for resentencing . . . ." *State v. Wortham*, 318 N.C. 669, 674, 351 S.E.2d 294, 297 (1987). Accordingly, we remand judgment number 12 CRS 51941 to the trial court for resentencing consistent with this opinion.

NO PREJUDICIAL ERROR in part; VACATED AND REMANDED in part.

Judges STROUD and MCCULLOUGH concur.

Report per Rule 30(e).