STATE OF NORTH CAROLINA v. SEBERIANO CORIA

No. COA98-24

(Filed 1 December 1998)

### 1. Evidence— hearsay—excited utterance exception

Statements made by an assault victim to a stranger and an officer concerning an attack upon her by defendant, her father, were admissible under the excited utterance exception to the hearsay rule, although the amount of time between the attack and statements was not shown, where the victim ran through dark woods alone and bleeding and approached the stranger for help; the victim was excited and upset, had obviously been hit about the face, and at times lapsed into her native Spanish language while speaking to the stranger and the officer; and the officer testified that when he spoke with the victim, she was very excited, upset, and almost to the point of hysteria. N.C.G.S. § 8C-1, Rule 803(2).

### 2. Constitutional Law— double jeopardy—deadly weapon— assault upon officer—assault with intent to kill

Defendant's constitutional right against double jeopardy was not violated by the imposition of separate sentences for the offenses of assault with a deadly weapon upon a law enforcement officer and assault with a deadly weapon with intent to kill, both of which arose from the same act of shooting at a deputy sheriff, since each offense requires proof of specific elements not required by the other. U.S. Const. amend. V; N.C. Const. art. I, § 19.

Appeal by defendant from judgments entered 31 July 1997 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 7 October 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robin P. Pendergraft, for the State.*

*Jeffrey S. Lisson for defendant-appellant.*

MARTIN, John C., Judge.

Defendant appeals from judgments entered upon his conviction of assault with a deadly weapon on a law-enforcement officer, assault

with a deadly weapon with intent to kill, and assault on a female. The evidence presented at trial tended to show that after dark on 14 October 1996, Scott Emerson was sitting on the back deck of his Winston-Salem home which looked out over a wooded ravine. Mr. Emerson heard a noise from out in his yard, and eventually a young Hispanic woman, seventeen-year-old Eneida Coria, approached his house. Ms. Coria appeared visibly upset, scared, and out of breath. Her jeans were wet from traversing the ravine, her hair was full of twigs, and her face was swollen and bruised. Ms. Coria, who at times lapsed into her native language of Spanish, told Mr. Emerson that she needed help and to call the police. Mr. Emerson helped Ms. Coria inside where he cleaned the fresh blood from her lip and nose and applied ice to her face.

Ms. Coria told Mr. Emerson that she and her father, the defendant, had argued over a boyfriend that she was seeing and that defendant began to hit her. Ms. Coria became fearful of defendant and fled the Coria household shortly before she encountered Mr. Emerson. When Deputy Chris Hill arrived at the Emerson residence, Ms. Coria stated that defendant was intoxicated during their argument, that she had attempted to leave and defendant dragged her back to the house and beat her, and that it was only when defendant began to beat her mother that Ms. Coria was able to escape.

Shortly thereafter, four law enforcement officers, including Deputy R.D. Longworth of the Forsyth County Sheriff's Office, arrived at the Coria residence. Defendant was not at the residence. Deputy Longworth and another officer returned to the Coria residence later that night along with Ms. Coria to retrieve some clothing for Ms. Coria. Deputy Longworth returned for a third time that night to the Coria residence upon a report of gunshots in the area. Deputy Longworth testified that he heard what he believed to be yelling and gunshots from within the Coria residence. Deputy Longworth was approaching the house when the garage door opened and defendant stepped outside. Deputy Longworth identified himself as a law enforcement officer, at which time defendant pulled a gun from his belt, pulled the slide back, and pointed it at Deputy Longworth. Deputy Longworth immediately drew his own weapon and repeatedly yelled at defendant to drop the gun. Defendant fired at Deputy Longworth approximately four to six times, and Deputy Longworth returned fire, striking defendant.

After she graduated from high school in June, 1997, Ms. Coria left the Winston-Salem area due to her fear of defendant. The State was

unable to locate her to testify at defendant's trial and notified defendant that her whereabouts were unknown and that the State intended to offer into evidence the statements which she had made to Mr. Emerson and Deputy Hill. Over defendant's objection, the trial court allowed Ms. Coria's statements into evidence under the excited utterance exception to the hearsay rule.

---

Defendant brings forward in his brief three assignments of error. The assignments of error are directed to the admission into evidence of Ms. Coria's hearsay statements to Mr. Emerson and Deputy Hill, to the trial court's denial of his motion to dismiss the charge of assault on a female, and to the trial court's failure to arrest judgment on one of the assault charges involving Deputy Longworth. His remaining assignments of error are deemed abandoned. N.C.R. App. P. 28(a). We find no error in the trial or judgments.

A.

[1] Defendant first argues that the trial court erred by admitting into evidence statements made by Ms. Coria to Mr. Emerson and Deputy Hill under the excited utterance exception to the hearsay rule. Specifically, defendant contends there was no evidence that Ms. Coria was still under the stress of an exciting event, and no evidence as to the duration of time that passed between the exciting event and Ms. Coria's statements, giving rise to the possibility that Ms. Coria had time to fabricate her statements. We disagree.

G.S. § 8C-1, Rule 803(2) provides that statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are not excluded by the rule against hearsay. N.C. Gen. Stat. § 8C-1, Rule 803(2). "It is well established that in order for an assertion to come within the parameters of this particular exception, 'there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication.' " *State v. Thomas*, 119 N.C. App. 708, 712-13, 460 S.E.2d 349, 352, *disc. review denied*, 342 N.C. 196, 463 S.E.2d 248 (1995) (citing *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985)). Moreover, "[w]hile the period of time between the event and the statement is without a doubt a relevant factor, the element of time is not always material," and the "modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement." *Id.* (citations omitted).

STATE v. CORIA

[131 N.C. App. 449 (1998)]

In the present case, the trial court conducted *voir dire* examinations of both Mr. Emerson and Deputy Hill prior to admitting Ms. Coria's statements. The court made findings that a startling event had occurred, that Ms. Coria thereafter ran through dark woods alone and bleeding, and that she approached a stranger, Mr. Emerson, for help. The trial court further found that Ms. Coria was very excited and upset, had obviously been hit about the face, and at times lapsed into her native tongue while speaking to Mr. Emerson and Deputy Hill. In fact, Deputy Hill testified that when he spoke with Ms. Coria at the Emerson house she was very excited, upset, and almost to the point of hysteria. The trial court's findings are supported by the evidence and, in turn, support the court's ruling that Ms. Coria's statements were made while she was still under the stress of a startling event and that she therefore had no opportunity to reflect on her statements. *See State v. Kerley,* 87 N.C. App. 240, 360 S.E.2d 464 (1987), *disc. review denied,* 321 N.C. 476, 364 S.E.2d 661 (1988) (placing emphasis on declarant's state of excitement while speaking rather than exact amount of time since startling event). This assignment of error is overruled.

Defendant also argues that Ms. Coria's statements provided the only evidence of an assault upon her, so that the trial court should have dismissed the charge of assault on a female. We have determined her statements were properly admitted; they provide plenary evidence of each essential element of the offense. Defendant's motion to dismiss the charge of assault on a female was properly denied.

B.

[2] Defendant next argues that the imposition of separate sentences for the offenses of assault with a deadly weapon upon a law enforcement officer and assault with a deadly weapon with intent to kill, both of which arose from the same act of shooting at Deputy Longworth, violated defendant's constitutional rights against twice being placed in jeopardy for the same offense. A defendant's right to be free from double jeopardy is protected by both the Fifth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution, prohibiting the imposition of multiple punishments for the same offense. *State v. Elliot,* 344 N.C. 242, 475 S.E.2d 202 (1996), *cert. denied,* 137 L.Ed.2d 312 (1997).

In *State v. Gardner,* 315 N.C. 444, 340 S.E.2d 701 (1986), the defendant argued that his conviction and punishment for both felonious breaking or entering and felonious larceny violated the prohi-

bition against multiple punishments for the same offense, where the felony of breaking or entering was used to elevate the larceny to a felony pursuant to G.S. § 14-72(b)(2). Rejecting his argument, the Supreme Court explained that the question of whether a defendant may receive cumulative punishments for the same conduct which violates two separate statutes is primarily a question of legislative intent, i.e., whether the legislature intended the offenses to be separate and distinct offenses.

> [D]ouble jeopardy does not prohibit multiple punishment for offenses when one is included within the other . . . if both are tried at the same time and if the legislature intended for both offenses to be separately punished.

*Id.* at 454, 340 S.E.2d at 709 (citing *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed.2d 535 (1983)). "[E]ven if the elements of two statutory crimes are identical and neither requires proof of a fact that the other does not, the defendant may, in a single trial, be convicted of and punished for both crimes if it is found that the legislature so intended." *Id.* at 455, 340 S.E.2d 709.

Pointing out that felony breaking or entering and felony larceny have historically been considered to be separate and distinct crimes, the Court determined that the legislature intended that a defendant may be separately punished for the crime of felonious breaking or entering and the crime of felonious larceny following that breaking or entering.

In *State v. Pipkins*, 337 N.C. 431, 446 S.E.2d 360 (1994), the Court concluded, upon a similar analysis, that the legislature intended to authorize separate punishments for the offenses, based upon the same contraband, of trafficking in cocaine by possession and possession of cocaine. Similarly, in *State v. Elliott*, 344 N.C. 242, 475 S.E.2d 202 (1996), the Court held that separate punishments were intended for felony child abuse and first degree murder, even when both offenses arose out of the same conduct by the defendant. The Court noted:

> The legislature's intent to provide for cumulative punishment may also be inferred from the fact that first degree murder and felony child abuse each " 'requires proof of a fact which the other does not' " (citations omitted).

*Id.* at 278, 475 S.E.2d at 218.

In *State v. Fernandez*, 346 N.C. 1, 484 S.E.2d 350 (1997), the Supreme Court decided that double jeopardy did not preclude separate punishment for first degree murder and first degree kidnaping which was elevated to first-degree based upon the victims having been murdered rather than released in a safe place. The Court held that an examination of legislative intent under *Gardner* was unnecessary because the factual elements necessary to prove the offenses were not the same; each crime contained an element not required to be proved in the other. Applying the Blockburger Test, referring to the decision of the United States Supreme Court in *Blockburger v. U.S.*, 284 U.S. 299, 76 L.Ed. 306 (1932), the Court said:

> If proof of an additional fact is required for each conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same.

*Id.* at 19, 484 S.E.2d at 361 (quoting *State v. Murray*, 310 N.C. 541, 548, 313 S.E.2d 523, 529 (1984)).

In *State v. Woodberry*, 126 N.C. App. 78, 485 S.E.2d 59 (1997), this Court held that the prohibition against double jeopardy was not violated by the imposition of consecutive sentences for one act which violated both G.S. § 14-31, malicious assault and battery in a secret manner, and G.S. § 14-32(a), assault with a deadly weapon with intent to kill inflicting serious injury. We relied upon *State v. Hill*, 287 N.C. 207, 214 S.E.2d 67 (1975), in which our Supreme Court pointed out that although the two offenses shared three common elements, each offense required proof of an element which the other did not.

We are, of course, advertent to the prior decisions of this Court in *State v. Partin*, 48 N.C. App. 274, 269 S.E.2d 250, *disc. review denied*, 301 N.C. 404, 273 S.E.2d 449 (1980); *State v. Byrd*, 50 N.C. App. 736, 275 S.E.2d 522, *disc. review denied*, 303 N.C. 316, 281 S.E.2d 654 (1981); and *State v. Locklear*, 121 N.C. App. 355, 465 S.E.2d 61, *cert. denied*, 342 N.C. 662, 467 S.E.2d 701 (1996). We conclude these cases do not require that either of defendant's sentences in the present case be vacated.

In *State v. Partin*, *supra*, this Court held that where two offenses each contain separate and distinct elements, double jeopardy does not prohibit charging a defendant with both crimes even where the facts underlying both charges are the same. In *Partin*, as in the case before us, the defendants were charged with assault with a deadly weapon on a law enforcement officer, and assault with a deadly weapon with the intent to kill. We stated,

Each offense required proof of an element which does not exist in the other charge. Under G.S. 14-34.2, the jury must find that the victim was a law enforcement officer acting in the exercise of his official duty at the time of the assault, which is not an element of G.S. 14-32, while under G.S. 14-32(a) and (c) there must be a finding that the assault was made with an intent to kill, which is not an element of G.S. 14-34.2.

*Id.* at 279-80, 269 S.E.2d at 254. In *Partin,* however, the defendants were not actually convicted of assault with a deadly weapon with intent to kill, but were convicted of the lesser included offense of assault with a deadly weapon, all of the elements of which are necessarily included within the offense of assault with a deadly weapon on a law enforcement officer. Therefore, the Court held that punishment for both crimes violated principles of double jeopardy. *Id.* at 282, 269 S.E.2d at 255.

In *State v. Byrd, supra,* decided a year after *Partin,* defendant was convicted of both assault with a deadly weapon upon a law enforcement officer while in the performance of his duties, in violation of G.S. § 14-34.2, and assault with a deadly weapon inflicting serious injury, in violation of G.S. § 14-32(c), arising out of the defendant's single act of shooting a police officer. Citing *Partin,* the Court held defendant could not be punished separately for the offenses, reasoning that the elements of the assault upon the officer while in the performance of his duties were all included in the offense of assaulting him with a deadly weapon inflicting serious injury. In *Locklear,* this Court followed *Byrd* and arrested judgment upon defendant's conviction for assault with a deadly weapon upon a law enforcement officer "since the elements of [that offense] are included in the offense of assault with a deadly weapon inflicting serious injury." *Locklear* at 357-58, 465 S.E.2d at 63.

A closer examination, however, of both *Byrd* and *Locklear* reveals that, as in *Woodberry,* though the offenses share two common elements, i.e., (1) assault, and (2) with a deadly weapon, each offense required proof of elements not required for the other. For conviction under G.S. § 14-34.2, proof was required that the victim was a law enforcement officer engaged in the performance of his official duties, proof of which was not required for conviction under G.S. § 14-32(c). Likewise, for conviction under G.S. § 14-32(c), proof was required that the victim was seriously injured, which was not required for conviction under G.S. § 14-34.2.

While decisions of one panel of this Court are binding upon subsequent panels unless overturned by a higher court, *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989), we also have a responsibility to follow the decisions of our Supreme Court. *Dunn v. Pate*, 334 N.C. 115, 431 S.E.2d 178 (1993); *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 504 S.E.2d 102 (1998). We believe, therefore, that we are bound to follow the reasoning of the Supreme Court in *Gardner, Pipkins, Elliott*, and *Fernandez*, and of this Court in *Woodberry*, rather than the opinions in *Byrd* and *Locklear*, which appear inconsistent therewith.

Applying such reasoning to the present case, the elements of assault with a deadly weapon with intent to kill include: (1) an assault; (2) with a deadly weapon; (3) with the intent to kill, N.C. Gen. Stat. § 14-32(c), while the elements of assault with a deadly weapon on a law enforcement officer include: (1) an assault; (2) with a deadly weapon; (3) on a law enforcement officer; (4) in performance of his official duties. N.C. Gen. Stat. § 14-34.2. Each offense requires proof of specific elements that the other does not. Following *Fernandez*, and applying the Blockburger Test, an analysis of legislative intent is not required because the offenses are not the same, and cumulative punishment would not offend double jeopardy principles.

Moreover, even an examination of legislative intent under *Gardner* clearly discloses an intent by the General Assembly that violations of G.S. § 14-32(c) and G.S. § 14-34.2 be punished separately. "In determining the intent of the legislature, the fact that each crime for which a defendant is convicted in one trial requires proof of an element the other does not demonstrates the legislature's intent that the defendant may be punished for both crimes." *State v. Swann*, 322 N.C. 666, 677, 370 S.E.2d 533, 539 (1988). We believe the legislative purposes underlying each statute were distinct. Our Supreme Court has held that the essence of G.S. § 14-32.4 "is the legislative intent to give greater protection to the law enforcement officer by proscribing a greater punishment for one who knowingly assaults such an officer." *State v. Avery*, 315 N.C. 1, 31, 337 S.E.2d 786, 803 (1985), *disc. review denied*, 326 N.C. 51, 389 S.E.2d 96 (1990); *See also State v. Kirby*, 15 N.C. App. 480, 488, 190 S.E.2d 320, 325, *appeal dismissed*, 281 N.C. 761, 191 S.E.2d 363 (1972) (intent of legislature was "to provide greater punishment for those who place themselves in open defiance of duly constituted authority by assaulting public officers who are on duty"). On the other hand, the stated purpose of G.S. § 14-32(c) is to protect life or limb. *State v. Cass*, 55 N.C. App. 291, 285 S.E.2d

337, *disc. review denied*, 305 N.C. 396, 290 S.E.2d 366 (1982). Thus, there is a clear indication that the legislature intended to authorize cumulative punishments for those who, by a single act, violate both G.S. § 14-32(c) and G.S. § 14-34.2.

No error.

Judges TIMMONS-GOODSON and HORTON concur.