BRYANT, Judge.
Where there was sufficient evidence in the record that defendant drove a vehicle and that he was impaired while driving, there was no error in the trial court's denial of defendant's motion to dismiss. We dismiss defendant's arguments regarding suppression of the blood test results and chain of custody where defendant's motions were not submitted to and ruled upon by the trial court. We uphold the verdict of the jury and the judgment of the court.
On 4 June 2011, defendant Robert Chad Skinner was issued citations for driving while impaired and careless and reckless driving. The matter was heard in Pitt County District Court, the Honorable W. Brian Desoto, Judge presiding. Following a bench trial, judgment was entered against defendant as to both charges. Defendant gave notice of appeal to the Superior Court.
Prior to trial in the Superior Court, on 14 January 2014 defendant filed a motion to quash the citation for driving while impaired on the basis that he was not properly served. Defendant also filed a motion to suppress evidence of blood drawn and chemical analysis of the same on 17 January, and then filed an objection to the introduction of a lab report and written chain of custody.
The matter was heard in Pitt County Superior Court, the Honorable W. Russell Duke, Jr., Judge presiding. Defendant's pre-trial motions to quash and to suppress blood draw, were denied by Judge Duke.[1] At the close of the State's evidence, the court allowed defendant's motion to dismiss the charge of careless and reckless driving. The charge of driving while impaired was submitted to the jury; however, a mistrial was declared when the trial court determined the jury to be "hopelessly deadlocked."
On 29 May 2014, the matter was again called for trial by jury in Pitt County Superior Court, the Honorable Alma L. Hinton, Judge presiding. Prior to the second jury trial defendant filed a motion to suppress evidence of statements made while in the hospital. However, defendant failed to refile his prior motion to suppress blood draw, and failed to refile an objection to lab and chain of custody reports.
The evidence at trial tended to show that on 4 June 2011, at 2:30 a.m., Highway Patrol Trooper Megan Wiggs[2] was dispatched to the scene of a single vehicle accident on N.C. Highway 102, just west of Ayden in Pitt County. At the scene were damaged mailboxes, 774 feet of tire marks, and an overturned pickup truck registered to defendant. Emergency medical services (EMS) had responded prior to Trooper Wiggs and EMS found defendant by the truck, complaining of abdominal pain. He had minor bleeding and a laceration to his ear, and he "obviously smelled of alcohol." EMS transported defendant to Pitt County Memorial Hospital. Trooper Wiggs followed and encountered defendant in the hospital emergency room. Defendant was "very out of it and talked to himself." Trooper Wiggs testified that, "[h]e spoke utterances while I was standing there, while the doctors and nurses were working on him.... He stated-I wasn't driving. He then stated-I was driving. I'm so stupid. I was so stupid. He then stated I'm 27-...." The trooper observed that defendant had red, glassy eyes, and a very strong odor of alcohol coming from his breath. As he talked, defendant exhibited a "slurred drawl" in his speech. Trooper Wiggs read to defendant from form "DHHS 4081, which is a rights of a person requested to submit to a chemical analysis to determine the alcohol concentration ." Trooper Wiggs then asked an attendant, a registered nurse, to draw blood from defendant. Trooper Wiggs observed the nurse draw two vials of blood from defendant, secure the vials, and write defendant's name on a sticker affixed to the top of each vial. The stickers, in addition to defendant's name, bore the date and Trooper Wiggs' initials. Trooper Wiggs saw that the vials were packed in a blood kit container and another sticker placed over the container's seal. Defendant's blood was later analyzed and determined to contain "0.16 grams of alcohol per 100 milliliters of whole blood."
Following the close of the evidence, the jury returned a guilty verdict as to the charge of driving while impaired and found two aggravating factors: (1) that at the time of the offense, defendant's faculties were grossly impaired; and (2) defendant had an alcohol concentration of 0.15 or more at the time of the offense. The trial court entered judgment in accordance with the jury verdict, sentencing defendant to an active term of 4 months, then suspending the sentence and placing defendant on supervised probation for 18 months. Defendant appeals.
On appeal, defendant raises the following issues: whether (I) his statement "I was driving" was voluntarily and understandingly made; (II) the trial court erred when it failed to suppress the results of defendant's blood test; (III) the trial court had jurisdiction over the impaired driving offense; (IV) the trial court erred by allowing a paramedic to state that defendant's abdominal pain was consistent with hitting the steering wheel; and (V) the trial court erred in denying defendant's motion to dismiss for insufficiency of the evidence.
I
Defendant argues that his statement "I was driving" was not voluntarily and understandingly made where he made the statement after he sustained a head injury, was in the trauma unit of the emergency department, "was very out of it" and "talked to himself" before losing consciousness. Defendant's motion requested suppression of defendant's statements made while he was in the hospital. Defendant contends that the trial court erred by denying his motion to suppress the statements and, during trial, overruling defendant's objections to testimony about the same. We disagree.
"The test of admissibility is whether the statements made by [the] defendant were in fact voluntarily and understandingly made." State v. Williford,275 N.C. 575, 579, 169 S.E.2d 851, 854 (1969) (citations omitted). Defendant cites State v. McCoy,303 N.C. 1, 277 S.E.2d 515 (1981). In McCoy,the defendant was interviewed by a State Bureau of Investigation (SBI) agent at his hospital bedside at 9:00 a.m. after investigators at the defendant's home found the deceased victim of a gunshot wound at the defendant's residence at 4:00 a.m. Id.at 5, 277 S.E.2d at 521. At trial, the defendant challenged the admission of his statement that he shot the victim on the basis that he " 'must have been' under the influence of pain-killing drugs so that he could not have knowingly and understandingly made a statement." Id.at 19, 277 S.E.2d at 529. Overruling defendant's objection, the trial court found that at the time of his statement, the defendant was alert, responsive and coherent and that "[h]is attending physician gave permission for [the] defendant to be interviewed. [The][d]efendant 'did not appear to be sleepy or confused nor did he hesitate to answer questions at any time.' " Id.at 19-20, 277 S.E.2d at 529.
Here, unlike in McCoy,defendant's statements were not in any way the product of an interrogation by a law enforcement officer. The circumstances and conditions under which defendant's statements were made showed them to be spontaneously and voluntarily made. These statements are more akin to those our Court determined to be excited utterances in State v. Coria,131 N.C.App. 449, 452, 508 S.E.2d 1, 3 (1998) (where the victim "was very excited, upset, and almost to the point of hysteria" and her statements to a law enforcement officer were made while she was still under the stress of a startling event and without an opportunity to reflect on her statements). See alsoN.C. Gen.Stat. § 8C-1, Rule 803(2) (2013) (defining "excited utterances" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Defendant's excited utterances were made while hospital staff worked on him and while he remained under the stress caused by the accident and his drinking. When Trooper Wiggs entered the hospital emergency room area in which defendant was being treated, "[defendant] stated-I wasn't driving. He then stated-I was driving. I'm so stupid. I was so stupid. He then stated I'm 27-.... " Defendant's statements do not appear to be the result of any reflective thought as shown by the inconsistency of those statements during a stressful event. The trial court properly allowed defendant's statements to be admitted as utterances that were a part of defendant's overall condition, a condition that was heard and observed by Trooper Wiggs as she entered the area where defendant was being treated. The trial court did not err in denying defendant's motion to suppress and in overruling defendant's objections to his statements. Accordingly, defendant's argument is overruled.
II
Next, defendant argues the trial court erred in failing to suppress his blood test result where (A) Trooper Wiggs did not have reasonable grounds to believe that defendant committed an implied consent offense; (B) there was no competent evidence that a qualified person drew defendant's blood; and (C) there was insufficient competent evidence of the chain of custody for the blood sample. Because defendant's contentions are based on a motion to suppress that was not heard and ruled on before the trial court from which this appeal is taken, we dismiss this argument.
When a mistrial is properly granted, "in legal contemplation there has been no trial." State v. Tyson,138 N.C. 627, 629 (138 N.C. 450, 452), 50 S.E. 456, 456 (1905). "Stated otherwise, a 'mistrial results in ification of a pending jury trial.' " Burchette v. Lynch,139 N.C.App. 756, 760, 535 S.E.2d 77, 80 (2000) (citation omitted). When a new trial is ordered, the new trial is " '[a] trial de novo,unaffected by rulings made therein during the original trial.' " Id.(quoting Goldston v.. Wright,257 N.C. 279, 280, 125 S.E.2d 462, 463 (1962) ); see also Akzona, Inc. v. S. Ry. Co.,314 N.C. 488, 495, 334 S.E.2d 759, 763 (1985) (holding that upon a new trial, a plaintiff "is not bound by the evidence presented at the former trial"); State v. Grogan,40 N.C.App. 371, 374, 253 S.E.2d 20, 23 (1979) (noting that "nothing alleged by the defendant in his motion for rehearing and supporting affidavits required [the judge at retrial] to rehear the motion which had previously been finally denied").
On 10 February 2014, defendant filed a motion to quash the DWI citation. Defendant had previously filed a motion to suppress evidence of blood drawn from defendant and the subsequent chemical analysis on 17 January 2014. Then, on 10 February 2014, prior to the jury trial before the Honorable W. Russell Duke, Jr., defendant filed an objection to the introduction of the chemical analyst's affidavit and/or chain of custody statement. The motion to suppress was denied, along with the motion to quash. That case resulted in a mistrial.
In a pre-trial hearing before Judge Alma L. Hinton defendant attempted to raise and have Judge Hinton rule on the same suppression motions. Judge Hinton noted that the motions, as filed, had been ruled upon and denied during the course of the trial before Judge Duke. Judge Hinton further noted that the motions and objections had not been re-filed in preparation for defendant's trial commencing on 29 May. Thus, Judge Hinton refused to entertain motions that had been previously filed and ruled upon in the prior case. Defendant did not re-file his motion to suppress blood draw prior to the 29 May 2014 trial. Therefore, there is nothing in the record to support a denial of defendant's motions or any other pertinent ruling by the trial court as of the 29 May 2014 judgment that could be challenged on appeal. We note defendant's motion to suppress statements was properly filed and heard by the trial court and on appeal, see Issue I.
Because defendant's arguments in this portion of his brief were not heard and ruled on by the trial court, these contentions are not properly before this Court. SeeN.C. R.App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). We dismiss this argument.
III
Next, defendant argues the trial court did not have jurisdiction over the impaired driving offense and erred where it denied defendant's motion to quash. Defendant contends that he did not sign the citation for an implied consent offense to acknowledge receipt, the charging officer did not certify delivery of the citation to defendant, and the testimony of Trooper Wiggs failed to establish that she issued and delivered a citation to defendant. We disagree.
We note that on 14 January 2014, in anticipation of his initial superior court trial before Judge Duke, defendant filed a motion to quash the North Carolina Uniform Citation issued against him on the basis of a failure to adhere to the requirements for certification of service as set out in N.C. Gen.Stat. § 15A-302 ("Citation"). Judge Duke denied the motion. Defendant failed to re-file a written motion in anticipation of his trial commencing 29 May. However, the portion of the transcript regarding the hearing on pretrial motions references with very little clarity, prior interactions between defendant and Judge Hinton as to the motion to quash. It is clear though that Judge Hinton properly denied defendant's motion to quash.
IV
Next, defendant argues that the trial court erred by allowing a paramedic to state that defendant's abdominal pain would be an indication that defendant hit the steering wheel. Specifically, defendant contends that the trial court erred in allowing the paramedic to give accident reconstruction testimony. We disagree.
"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen.Stat. § 8C-1, Rule 701 (2013). "When reviewing a trial court's rulings on the admission or exclusion of lay witness or expert testimony, we review for abuse of discretion." State v. Buie,194 N.C.App. 725, 730, 671 S.E.2d 351, 354 (2009) (citation and quotations omitted).
Here, the State called as a witness Andrew Rhodes, a firefighter/paramedic with fourteen years of experience, who was dispatched to the scene where he found defendant sitting beside an overturned vehicle on 4 June 2011. Rhodes testified that the usual procedure is to "size-up" the scene, to count the number of patients and their injuries for triage. Rhodes noted that defendant had a laceration to his ear and that defendant "was complaining of abdominal pain."
Q. Did ... Defendant have injuries consistent of a wreck, Mr. Rhodes?
A. Yes, sir, especially with the complaint of abdominal pains. The mechanism of injury was a vehicle rollover.
...
Abdominal pain from a rollover would be indication that possibly the patient hit the steering wheel-
...
-hit the steering wheel with his chest or abdomen, causing the injury. Also, he had the laceration to the ear from striking components inside the vehicle.
EMS workers placed a collar around defendant's neck and placed him on a backboard for further assessment. After dressing the wound to defendant's head, monitoring his blood pressure, pulse, respiratory rate, and oxygen saturation level in his blood, EMS workers established IV access, administered saline fluids and transported defendant to the hospital.
Rhodes' testimony explained the basis for observations and actions taken in the course of his duties as an EMS provider responding to the scene of an accident. His testimony was rationally based on his perception, and thus, the trial court did not abuse its discretion in allowing Rhodes to testify that defendant's abdominal pain was an "indication that possibly [defendant] hit the steering wheel" when his vehicle rolled over. Further, Rhodes' testimony, if believed by the jury, would assist in a factual determination that defendant was driving the vehicle at the time of the accident. Thus, this opinion testimony was relevant and admissible Accordingly, defendant's argument is overruled.
V
Lastly, defendant argues that the trial court erred when it denied defendant's motions to dismiss where there was insufficient evidence that defendant was the driver of the vehicle and was impaired. Specifically, defendant refers to the previous arguments presented on appeal and contends that absent the evidence challenged in those arguments, there was insufficient evidence to support defendant's conviction.
"The trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense."State v. Robinson,355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002) (citation and quotations omitted).
In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.
State v. Parker,354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001) (citations omitted).
Here, the evidence indicated that a single vehicle wreck occurred at 2:30 a.m. The scene included damaged mailboxes and lengthy tire marks leading to an overturned truck registered to defendant. Defendant, the sole individual found at the scene, was within two feet of the truck. Defendant was bleeding, "had injuries consistent of a wreck" and complained of abdominal pain consistent with hitting the steering wheel when the vehicle rolled over. An EMS provider described defendant as "obviously smell[ing] of alcohol[,]" a "[h]eavy alcohol smell without having to get in extreme proximity to his, to his face." Defendant's blood alcohol content was 0.16-two times the legal limit. In the light most favorable to the State, this was sufficient evidence from which a jury could find defendant was guilty of driving while impaired. Accordingly, this argument is overruled.
NO ERROR IN PART; DISMISSED IN PART.
Judges STEPHENS and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from verdict and judgment entered 29 May 2014 by Judge Alma L. Hinton in Pitt County Superior Court. Heard in the Court of Appeals 2 June 2015.

The outcome of defendant's objection to the lab report and chain of custody statement is not clear from the record. However, as the statutory requirement that defendant file his objection to the State's notice of intent to introduce test results without testimony of analyst and/or chain of custody prior to trial, see N.C. Gen.Stat. § 20-139.1(c1) ("If the defendant[ ] ... fails to file a written objection as provided in this subsection, then the [chemical analyst's] report shall be admitted into evidence without the testimony of the analyst."), was observed, we presume the State had available for testimony at the first jury trial the analysts and any other witnesses necessary to the chain of custody.

On 4 June 2011, Trooper Wiggs used her maiden name, Kongs.