IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-312

 No. COA20-528

 Filed 6 July 2021

 Davie County, No. 17 CRS 246

 STATE OF NORTH CAROLINA

 v.

 CARLOS GARCIA LOWERY, A/K/A CARLOS GARCIA LOWERY, Jr.

 Appeal by Defendant from Judgment entered 24 January 2019 by Judge

 Joseph N. Crosswhite in Davie County Superior Court. Heard in the Court of Appeals

 14 April 2021.

 Attorney General Joshua H. Stein, by Solicitor General Fellow Heyward
 Earnhardt, Solicitor General Ryan Y. Park, and Assistant Solicitor General
 Nicholas S. Brod for the State.

 Attorney Paul F. Herzog for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Carlos Lowery (Defendant) appeals from Judgment entered 24 January 2019

 upon his conviction of Second-Degree Murder. The Record before us, including

 evidence presented at trial, tends to show the following:

¶2 Terry Smoot (Smoot) was “the neighborhood runner” for a neighborhood near

 downtown Mocksville. As the “neighborhood runner,” Smoot would sometimes buy
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 items, like beer, from the store for people in the neighborhood but would also obtain

 “crack or weed” for people. Smoot also allegedly worked for Defendant as a runner

 for drug sales in order to reduce the number of people coming and going from

 Defendant’s residence.

¶3 On 25 October 2016, Smoot visited the “Soda Shop,” a convenience store in the

 neighborhood. Recordings from that day showed Smoot enter the store, purchase a

 pack of cigarettes, and leave at 3:08 p.m.

¶4 Edgar Pozo (Pozo) and Smoot had been friends since 2004. At 4:30 p.m. on 25

 October 2016, Pozo finished his shift at Panel Service Component International (PSC)

 and began walking home. Pozo’s residence was approximately a five-minute walk

 from the PSC facility, and the walk required Pozo to cross some railroad tracks. As

 Pozo approached the railroad tracks, he heard someone call out “Ed.” “Ed” was a

 nickname given to Pozo by Smoot. Pozo saw Smoot “lying there” and bleeding from

 the mouth.

¶5 Pozo asked Smoot what happened, to which Smoot replied, “Red beat me up.”

 Evidence at trial revealed Defendant was known to go by the nickname “Red.”

¶6 Smoot asked Pozo to “[t]ell [Smoot’s] dad to tell [Smoot’s] brother come get

 [Smoot].” Pozo left Smoot to inform Smoot’s father of Smoot’s condition, before

 heading home. After returning home, Pozo noticed that neither Smoot’s father nor

 brother had left to help Smoot. As a result, Pozo went back to where he had found
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 Smoot. Upon returning, Pozo found Smoot “hunched” over in the same spot. Pozo

 tried helping Smoot to his feet, but Smoot “screamed and fell back down.” Pozo

 realized Smoot was severely injured, prompting Pozo to call 9-1-1 around 4:55 p.m.

¶7 Shortly after, around 5:00 p.m., EMTs and local law enforcement began

 arriving. Roger Spillman (Officer Spillman), an on-duty patrol officer with the

 Mocksville Police Department, was the first to arrive. At trial Officer Spillman

 testified that upon arriving and seeing Smoot, he asked “[w]hat happened[?]” and

 “who did this to you?” Smoot responded, “Carlos Lowery” and “Red beat me up.”

¶8 Around the same time Officer Spillman arrived, Detective Brian Nichols

 (Detective Nichols), with the Mocksville Police Department, also joined the scene.

 Detective Nichols testified he also approached Smoot and asked what happened, to

 which Smoot responded, again, by identifying Carlos Lowery as his attacker. The

 law enforcement officers then began securing the scene.

¶9 William Frye (Frye), a volunteer EMT, arrived on the scene near the time when

 Officer Spillman and Detective Nichols arrived. According to Frye, prior to

 conducting an initial medical assessment, he overheard Smoot tell Detective Nichols

 the name “Carlos Lowery” and “[he] jumped me.” He further testified Smoot’s speech

 had become garbled indicating Smoot was in pain, as he was unable to speak in

 complete sentences. Upon his initial assessment Frye observed Smoot was suffering

 from “labored breathing,” “bleeding from the face,” and “his cheeks [were] swollen
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 and around his eyes.” However, Smoot remained adamant he wanted to go home

 rather than to the hospital. Chris Hefner (Lieutenant Hefner), a patrol supervisor

 for the Mocksville Police Department, was also at the scene that day. He also heard

 Smoot identify “Carlos Lowery” as his attacker.

¶ 10 Last at the scene were paramedics Brian Williams (Williams) and Kristie

 McManus (McManus). Williams described Smoot’s mental state as “somewhat

 altered,” as a result of his severe injuries. Williams and McManus placed Smoot in

 an ambulance to be transferred to Wake Forest Baptist Hospital for treatment.

 Before the ambulance left, Detective Nichols got in the ambulance and again asked

 Smoot who attacked him, to which Smoot again responded, “Carlos Lowery.”

¶ 11 After the ambulance left, Detective Nichols canvassed the neighborhood to try

 and locate any potential witnesses. While canvassing, Detective Nichols came across

 two men sitting in front of a house near the scene. Detective Nichols asked the men

 if they knew a “Carlos Lowery,” to which both men responded they did not. Detective

 Nichols later discovered one of the two men was, in fact, Carlos Lowery.

¶ 12 Smoot died at Wake Forest Baptist Hospital at 11:39 p.m. An autopsy found

 numerous abrasions and bruises on the exterior of Smoot’s body. An internal

 examination revealed multiple rib fractures, likely caused by “blunt force injury,”

 which would have made it difficult for Smoot to breathe. Smoot’s lungs contained
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 substantial amounts of blood, and both his liver and kidneys were lacerated. The

 blood vessels to Smoot’s kidney were also transected.

¶ 13 A Davie County Grand Jury indicted Defendant on charges of First-Degree

 Murder and Common Law Robbery. Defendant’s case came for trial in Davie County

 Superior Court on 14 January 2019.

¶ 14 Prior to trial, Defendant filed a Motion to Limit Evidence/Testimony to exclude

 testimony of the statements Smoot made to Pozo, EMTs, and law enforcement on the

 bases these statements were inadmissible hearsay and their admission would violate

 Defendant’s constitutional rights to due process and to confront witnesses. On 10

 January 2019, the trial court entered an Order denying Defendant’s Motion to Limit

 Evidence/Testimony. Specifically, the trial court determined the statements made by

 Smoot to Pozo and Detective Nichols were “admissible under the excited utterance

 exception to the hearsay rule.” The trial court further concluded the testimony of the

 other law enforcement officers and EMTs was admissible as corroborative of the

 statements to Pozo and Detective Nichols. The trial court did not separately address

 the constitutional grounds alleged in Defendant’s Motion.

¶ 15 At trial, Pozo, the EMTs, and law enforcement officers testified as to the

 statements Smoot made to them at the scene of the incident. Defendant made general

 objections to the testimony regarding Smoot’s statements about the identity of his

 assailant to Pozo, the EMTs, and law enforcement officers.
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

¶ 16 The State also presented testimony from Major Koula Black (Major Black), an

 Operations Manager for the Mocksville Police Department. In October 2016, Major

 Black was an undercover narcotics detective. Through the course of her employment,

 Major Black had become familiar with the phone system at the Davie County jail,

 including the use of PIN numbers and voice recognition to identify an inmate making

 a call. Major Black was called, in part, to testify about a phone call made from the

 Davie County jail between Defendant and Tanisha Gaither (Gaither). Major Black

 testified she was familiar with the voices of both Defendant and Gaither from her

 time in undercover work where she observed Defendant “very regular[ly]” at an

 address in the same Mocksville neighborhood where Smoot was assaulted, and

 identified Defendant as “the person [Major Black] came to know as Red or Carlos

 Lowery.” The State then elicited testimony from Major Black about “general topics

 of conversation” in the call, before playing the call for the jury. Over Defendant’s

 general objection, the trial court allowed Major Black to testify that during the call,

 Defendant said that on the day of the Smoot’s death Defendant “got the cigarettes

 and the change, but not the phone.” Major Black confirmed a “cell phone, U.S.

 currency and cigarettes” were items alleged to have been stolen from Smoot in the

 attack.

¶ 17 The jury found Defendant guilty of Second-Degree Murder, but acquitted

 Defendant on the charge of Common Law Robbery. The trial court sentenced
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 Defendant to 339 to 419 months in prison. Defendant gave oral Notice of Appeal in

 open court.

 Issues

¶ 18 The issues raised by Defendant on appeal are whether the trial court erred in

 admitting: (I) testimony from Pozo of statements made to him by Smoot identifying

 Defendant as the assailant under the excited utterance exception to the hearsay rule;

 (II) testimony from Officer Spillman, Detective Nichols, and Frye as to Smoot’s

 statements identifying Defendant as the assailant in violation of Defendant’s

 constitutional rights under the Confrontation Clause; and (III) testimony from Major

 Black about the contents of the recorded telephone call between Defendant and

 Gaither.

 Analysis

 I. Excited Utterance

¶ 19 Defendant first contends the trial court committed prejudicial error by

 admitting Pozo’s testimony that Smoot identified Defendant by Defendant’s

 nickname “Red” as Smoot’s assailant under the “excited utterance” exception to the

 hearsay rule pursuant to N.C. R. Evid 803(3). “When preserved by an objection, a

 trial court’s decision with regard to the admission of evidence alleged to be hearsay

 is reviewed de novo.” State v. Johnson, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797

 (2011).
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

¶ 20 “ ‘Hearsay’ is a statement, other than one made by the declarant while

 testifying at the trial or hearing, offered in evidence to prove the truth of the matter

 asserted.” N.C. Gen. Stat. § 8C-1, Rule 801(c) (2019). Generally, “[h]earsay is not

 admissible, except as provided by statute[.]” N.C. Gen. Stat. § 8C-1, Rule 802 (2019).

 One such exception are statements that may be classified as “excited utterances.”

 Excited utterances are defined by statute as “statement[s] relating to a startling

 event or condition made while the declarant was under the stress of excitement

 caused by the event or condition.” N.C. Gen. Stat. § 8C-1, Rule 803(2) (2019). “In

 order to fall within this hearsay exception, there must be (1) a sufficiently startling

 experience suspending reflective thought and (2) a spontaneous reaction, not one

 resulting from reflection or fabrication.” State v. Smith, 315 N.C. 76, 86, 337 S.E.2d

 833, 841 (1985).

¶ 21 First, on appeal, Defendant makes no argument the alleged assault on Smoot

 would not qualify as a “sufficiently startling experience” under the excited utterance

 exception. See generally State v. Coria, 131 N.C. App. 449, 508 S.E.2d 1(1998)

 (statements following an assault qualifying as an excited utterance). Rather,

 Defendant argues Smoot’s statements to Pozo were sufficiently remote in time from

 the assault and that Smoot was not in a condition of excitement when he made the

 statements such that Smoot’s statements were not “a spontaneous reaction,” but

 instead “one resulting from reflection or fabrication.” Specifically, Defendant
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 contends because it is impossible to pinpoint the exact time of the attack given the

 approximate hour and a half between the time Smoot left the Soda Shop and when

 Smoot made the statements to Pozo, after Pozo first discovered Smoot, it is possible

 the assault had occurred “perhaps as much as 75 to 90 minutes” earlier. Defendant’s

 argument, however, rests on a speculative assessment of the facts precisely because

 the Record does not disclose how much time elapsed from the assault until the

 statements were made. Put another way, the assault may have occurred just minutes

 before Pozo found Smoot but no more than approximately 75-90 minutes before.

¶ 22 “Moreover, ‘[w]hile the period of time between the event and the statement is

 without a doubt a relevant factor, the element of time is not always material,’ and the

 ‘modern trend is to consider whether the delay in making the statement provided an

 opportunity to manufacture or fabricate the statement.’ ” Coria, 131 N.C. App. at

 451, 508 S.E.2d at 3 (alterations in original) (quoting State v. Thomas, 119 N.C. App.

 708, 712-13, 460 S.E.2d 349, 352 (1995)). As the Official Commentary to Rule 803

 notes: “the standard of measurement is the duration of the state of excitement. ‘How

 long can excitement prevail? Obviously there are no pat answers and the character

 of the transaction or event will largely determine the significance of the time factor.’

 ” N.C. Gen. Stat. Ann. § 8C-1, Rule 803 cmt. (2019). For example, in State v. Hamlette,

 our Supreme Court concluded statements were properly admitted as excited

 utterances where:
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 only three minutes passed between the witness Betterton’s
 hearing of the shots and [the victim’s] statement that defendant
 shot him. Within thirteen minutes after the shooting, [the victim]
 told [Officer] Clayton that defendant had shot him. When he
 made these statements, he was suffering from three gunshot
 wounds, was bleeding from the mouth and chest, was at the crime
 scene and, at the time of the second statement, was being
 prepared by ambulance attendants for the trip to the hospital.

 302 N.C. 490, 495, 276 S.E.2d 338, 342 (1981). The Court reasoned: “These

 circumstances support the trustworthiness of these statements made while the victim

 was under the immediate influence of the act.” Id. Notably, the Court also observed:

 “The statements do not in any way lose their spontaneous character because they

 were in response to questions such as: ‘What is wrong?’ ‘Who shot you?’ ‘How did they

 leave?’ ” Id. (citations omitted).

¶ 23 This Court has focused the temporal inquiry in terms of whether the declarant

 “was still under the stress of a startling event and . . . therefore had no opportunity

 to reflect on her statements.” Coria, 131 N.C. App. at 452, 508 S.E.2d at 3. Coria is

 particularly instructive in this case because there, as here, the record did not disclose

 the lapse in time between the assault and the declarant’s statements first to a witness

 and later to a law enforcement officer. Id. at 450, 508 S.E.2d at 2. In that case, a

 witness observed the female victim running out of the woods having crossed a ravine.

 Id. The victim was upset and had a bruised and swollen face and bloody nose and lip.

 The victim told the witness the defendant had assaulted her while they were at the
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 defendant’s home, and she had subsequently fled. Id. The victim also recounted

 similar statements to a law enforcement officer who later responded to the witness’s

 home. Id. Our Court determined these statements were made while the victim was

 still under the stress of a startling event and properly admitted as excited utterances

 where, in part, the victim was “very excited and upset, had obviously been hit about

 the face, and at times lapsed into her native tongue[.]” Id. at 452, 508 S.E.2d at 3.

¶ 24 Here, the witness, Pozo¸ found the victim, Smoot, at the apparent crime scene,

 injured and bloody following the assault, hunched on the ground requesting help.

 Defendant nevertheless argues because Pozo initially described Smoot as “calm” and

 that although Smoot was in pain, Pozo’s first observation was that he “didn’t think it

 was that bad really,” Smoot was neither excited nor in such pain from his injuries

 that he made these statements under the stress or excitement of the assault.

 Defendant’s arguments, however, ignore the facts that at the time Smoot had

 sustained multiple rib fractures, internal bleeding, damage to internal organs, and

 was aspirating blood. These injuries made it difficult for Smoot to breathe or move,

 and eventually contributed to his death. On these facts, we cannot conclude Smoot

 no longer acted under the stress of excitement caused by the assault, when he made
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 the statements to Pozo.1 See State v. Kerley, 87 N.C. App. 240, 243, 360 S.E.2d 464,

 466 (1987). Thus, Pozo’s testimony as to Smoot’s statements identifying Defendant

 as the assailant were properly admitted as excited utterances. Therefore, the trial

 court did not err in denying Defendant’s pre-trial Motion to exclude these statements

 or by overruling Defendant’s objection to this testimony at trial.

 II. Confrontation Clause

¶ 25 Defendant contends the trial court violated his constitutional right to confront

 witnesses under the Confrontation Clause, when it admitted the statements by Smoot

 identifying him as the assailant through the testimony of Officer Spillman, Detective

 Nichols, and Frye.

¶ 26 However, as a threshold matter:

 1 Defendant cites State v. Riley, 154 N.C. App. 692, 572 S.E.2d 857 (2002), and State

 v. Little, 191 N.C. App. 655, 664 S.E.2d 432 (2008), as support for his position. Both cases
 are, however, inapposite to this case. In both of those cases, we affirmed instances where the
 trial court sustained an objection to hearsay and excluded statements as not constituting
 excited utterances. Furthermore, in Riley, the defendant, who was charged with felony
 speeding to elude arrest, told the officer who arrested him following a crash that another
 occupant of the car told [the] defendant to flee because the person “had warrants against
 him” and had a gun at the time. Riley, 154 N.C. App. at 694, 572 S.E.2d at 858. Our Court
 stated: “defendant had only minor injuries and did not require medical treatment. Although
 the record does not indicate the amount of time between [the] defendant’s crashing the
 vehicle and making the statement, the record is clear that a sufficient amount of time had
 lapsed to provide [the] defendant with an opportunity to fabricate a statement.” Id. at 695,
 572 S.E.2d at 859. Likewise in Little, we upheld the trial court’s exclusion of a witness
 statement given to a SBI agent “several hours” after the shooting in that case where the
 statement was “[c]learly . . . not the product of a ‘spontaneous reaction, not one resulting from
 reflection or fabrication.’ ” Little, 191 N.C. App. at 665, 664 S.E.2d at 439.
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 In order to preserve an issue for appellate review, a party must
 have presented to the trial court a timely request, objection, or
 motion, stating the specific grounds for the ruling the party
 desired the court to make if the specific grounds were not
 apparent from the context. It is also necessary for the
 complaining party to obtain a ruling upon the party’s request,
 objection, or motion.

 N.C.R. App. P. 10(a)(1) (2021). More specifically, our Courts consistently recognize

 “[c]onstitutional issues not raised and passed upon at trial will not be considered for

 the first time on appeal.” State v. Lloyd, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607

 (2001).

¶ 27 Here, Defendant did raise the Confrontation Clause objection in his pretrial

 Motion to Limit Evidence/Testimony. However, in ruling on that Motion, the trial

 court based its decision solely on the statutory hearsay objection and made no

 reference to any state or federal constitutional provision, including the Sixth

 Amendment or the Confrontation Clause. Moreover, although Defendant also

 objected to the testimony at trial, the objection was general and did not specifically

 raise any constitutional ground for the exclusion of Smoot’s statements. Thus,

 Defendant has not preserved this constitutional issue for appeal. See N.C.R. App. P.

 10(a)(1) (2021); see also State v. Lemons, 352 N.C. 87, 91, 530 S.E.2d 542, 544 (2000)

 (“While [the] defendant clearly objected to the admission of . . . statements . . . on

 evidentiary grounds, we are unable to find any indication that at trial [the] defendant

 cited the Sixth Amendment or any constitutional grounds as the basis for his
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 objection to the admission of . . . [these] statements into evidence.”); State v. Mobley,

 200 N.C. App. 570, 572, 684 S.E.2d 508, 510 (2009) (objection on hearsay grounds did

 not invoke the Confrontation Clause). Furthermore, Defendant has not requested we

 invoke N.C.R. App. P. 2 or apply plain error review to this issue. Therefore, as the

 issue was not preserved for appeal, we do not address it.2

 III. Telephone Call

¶ 28 Defendant also contends the trial court erred in admitting testimony from

 Major Black regarding the contents of Defendant’s telephone call to Gaither made

 from the Davie County jail. Specifically, Defendant argues the testimony constituted

 improper lay opinion testimony under Rule 701 of the North Carolina Rules of

 Evidence in that the recording itself was available and played for the jury and, thus,

 Major Black’s testimony would not have been helpful to the jury’s determination as

 to the content of the telephone conversation. First, however, Defendant raised only

 a general objection to this testimony. Thus, the basis for Defendant’s objection at

 2 In a footnote in his brief to this Court, Defendant submits he is also renewing his

 hearsay arguments raised as to Pozo’s testimony to the testimony of these three witnesses.
 However, Defendant makes no specific argument the trial court erred in admitting the
 testimony of these witnesses. Moreover, unlike Pozo’s testimony, the trial court did not
 expressly ground admission of the law enforcement and EMT witnesses in the excited
 utterance hearsay exception. We deem those arguments abandoned. N.C.R. App. P. 28(b)(6)
 (2021).
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 trial is unclear and this argument could also be deemed unpreserved. See N.C.R.

 App. P. 10(a)(1) (2021).

¶ 29 Nevertheless, assuming Defendant’s general objection preserved this issue for

 review, Rule 701 states: “If [a] witness is not testifying as an expert, [the witness’s]

 testimony in the form of opinions or inferences is limited to those opinions or

 inferences which are (a) rationally based on the perception of the witness and (b)

 helpful to a clear understanding of [the witness’s] testimony or the determination of

 a fact in issue.” N.C. Gen. Stat. § 8C-1, Rule 701 (2019). “[W]hether a lay witness

 may testify as to an opinion is reviewed for abuse of discretion.” State v. Washington,

 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), disc. rev. denied, 353 N.C. 396,

 547 S.E.2d 427 (2001). “Abuse of discretion results where the court’s ruling is

 manifestly unsupported by reason or is so arbitrary that it could not have been the

 result of a reasoned decision.” State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523,

 527 (1988) (citation omitted).

¶ 30 As a general proposition:

 For a court to allow a witness in a criminal case to testify to the
 content of a telephone conversation, the identity of the person
 with whom the witness was speaking must be established. In
 such cases identity may be established by testimony that the
 witness recognized the other person’s voice, or by circumstantial
 evidence.
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 State v. Dial, 122 N.C. App. 298, 309, 470 S.E.2d 84, 91 (1996) (citations omitted).

 Here, Major Black opined the speakers in the recorded telephone call were Defendant

 and Gaither based on both her familiarity with the procedures employed in the jail’s

 telephone system used to identify the inmate making the call—Defendant—along

 with her own familiarity with both Defendant and Gaither and their respective

 voices. Major Black’s lay opinion as to the identity of the speakers was therefore

 based on her own knowledge and perceptions. Indeed, Defendant did not object at

 trial and raises no argument on appeal about Major Black’s identification of

 Defendant and Gaither as the speakers in the recording, instead focusing solely on

 Major Black’s testimony about the general topics discussed in the telephone call.

 Thus, Major Black’s testimony about the contents of the recorded telephone call was

 admissible on this basis.

¶ 31 Assuming further that Major Black’s testimony about the general topics of

 conversation in the telephone call, based on Major Black’s direct personal knowledge

 of the content of the recording, in fact, constitutes a lay opinion, it was plainly

 rationally based in Major Black’s perception from listening to the recorded call.

 Again, Defendant does not contest this point. Instead, Defendant argues the trial

 court abused its discretion in admitting the testimony because Major Black’s

 testimony was not helpful to the jury’s clear understanding of the content of the call
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 or its determination of any fact in issue where the jury heard the recording and could

 draw its own conclusions as to the content of the conversation.

¶ 32 In support of his position, Defendant relies on our decision in State v. Belk, 201

 N.C. App. 412, 689 S.E.2d 439 (2009). In Belk, the defendant argued that the trial

 court erred in allowing a police officer to testify to the defendant’s identity in a

 surveillance video tape. Belk, 201 N.C. App. at 413, 689 S.E.2d at 440. This Court

 recognized lay opinion testimony identifying a criminal defendant may be admissible

 where the testimony “would be helpful to the jury in the jury’s fact-finding function

 rather than invasive of that function, and the helpfulness outweighs the possible

 prejudice to the defendant from an admission of the testimony.” Id. at 415, 689 S.E.2d

 at 441 (citation omitted).

¶ 33 However, there, the officer’s familiarity with the defendant’s appearance was

 confined to a few brief encounters of “minimal contact.” Id. at 417, 689 S.E.2d at 442.

 Furthermore, “there was no evidence presented by either party tending to show that

 the individual depicted in the surveillance footage had disguised his appearance at

 the time of the offense or that Defendant had altered his appearance prior to trial.”

 Id. Additionally, although the video initially was “ ‘very fuzzy’ when shown on the

 large projection screen to the jury,” any prejudice to the defendant was abated as the

 jurors also “had the opportunity to view the video footage on a personal computer.”

 Id. at 417, 689 S.E.2d at 443. Thus, “[t]he only factor supporting the trial court’s
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

 conclusion [was the officer’s] familiarity with Defendant’s appearance, based on . . .

 brief encounters.” Id. at 418, 689 S.E.2d at 443. This Court determined: “there was

 no basis for the trial court to conclude that the officer was more likely than the jury

 to correctly identify Defendant as the individual in the surveillance footage.” Id.

 Accordingly, we held “the trial court erred by allowing [the officer] to testify that, in

 her opinion, the individual depicted in the surveillance video was Defendant.” Id.

¶ 34 Belk is not applicable here. First, the issue in Belk was the officer’s

 identification of the defendant. Identity—specifically, whether Major Black was

 better positioned to identify Defendant as the caller than the jury because of Major

 Black’s familiarity with Defendant and Gaither or her ability to identify them or their

 voices on the call—is not at issue here. Further, unlike Belk where there were no

 issues of the clarity of the surveillance video and any issues with the projection to the

 jury were ameliorated, here, Defendant describes the recording of the call and

 Defendant’s voice as “garbled,” and the State describes the recording as “distorted.”

 Given Major Black’s familiarity with both the telephone system and with Defendant

 and Gaither and their voices, we cannot say then that there was “no basis for the trial

 court to conclude that the officer was more likely than the jury to correctly identify”

 the contents of the recording of the telephone call between Defendant and Gaither.

 Id.
 STATE V. LOWERY

 2021-NCCOA-312

 Opinion of the Court

¶ 35 Moreover, in Belk, we concluded the error in admitting the officer’s testimony

 was prejudicial where “the State’s case rested exclusively on the surveillance video

 and [the officer’s] identification testimony.” Id. Here, Major Black’s testimony and

 the recording were not the only evidence from which the jury could conclude

 Defendant was Smoot’s assailant. Indeed, as noted, there were numerous instances

 of witnesses identifying Defendant at trial. Thus, we cannot conclude there is a

 reasonable possibility that, had this testimony been excluded, the jury would have

 reached a different result. See N.C. Gen. Stat. § 15A-1443(a) (2019) (“A defendant is

 prejudiced by errors relating to rights arising other than under the Constitution of

 the United States when there is a reasonable possibility that, had the error in

 question not been committed, a different result would have been reached at the trial

 out of which the appeal arises.”). Therefore, even if admission of Major Black’s

 testimony constituted error, it did not rise to the level of prejudicial error requiring

 reversal or a new trial. Consequently, the trial court did not abuse its discretion or

 commit reversible error in admitting Major Black’s testimony.

 Conclusion

¶ 36 Accordingly, for the foregoing reasons, there was no error in Defendant’s trial

 and the Judgment is affirmed.

 NO ERROR.

¶ 37 Judges DIETZ and ZACHARY concur.